Filed 3/22/13  In re A.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,  Plaintiff and Respondent,  v.  I.R.,  Defendant and Appellant. | E056636  (Super.Ct.No. RIJ114730)  OPINION |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, Anna M. Deckert, Deputy County Counsel, for Plaintiff and Respondent.

1

No appearance for Minor.

A.R. (minor, born March 2011) came to the attention of plaintiff and respondent Riverside County Department of Public Social Services (the department) on July 7, 2011, upon receipt of a report of a welfare check completed by law enforcement. Mother had a previous history with the department in which minor's older sibling, A.B., had been removed due to allegations of physical abuse, general neglect, and mother's mental health condition; mother's reunification services as to A.B. had already been terminated. Since A.B.'s case was still pending, the department filed a juvenile dependency petition adding minor to the same case as A.B. The juvenile court removed minor from mother's custody and denied mother reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b).[1] On May 10, 2012, the juvenile court terminated mother's parental rights.

On appeal, mother contends the juvenile court prejudicially erred in finding the Indian Child Welfare Act (ICWA) did not apply. Mother additionally argues she was deprived of her constitutional and statutory rights to due process when the juvenile court appointed a guardian ad litem (GAL), purportedly without a noticed hearing and without mother's participation in making its determination of mother's mental incompetency. We affirm the judgment.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

On July 7, 2011, the department received a 10-day referral from law enforcement with allegations of general neglect. Law enforcement reported responding to a complaint that minor had been crying for hours. Law enforcement informed the department that mother appeared to be developmentally disabled, as she had a difficult time responding to questions.

A check of mother's previous department history revealed that A.B. had been taken into protective custody on June 23, 2007. Mother had been seen hitting A.B. on the head where he had a scar from a recent brain surgery, mother was not providing proper medical treatment for A.B., had a history of substance abuse, and had an untreated mental health condition diagnosed as Paranoid Schizophrenia.

The juvenile court appointed mother a GAL on June 27, 2007. A psychologist had performed an evaluation of mother on August 15, 2007, in which he determined mother was "''functioning in the mild range of retardation'''" and determined her "'ability to take care of a child is extremely low . . . .'" He additionally opined she would not benefit from services. Maternal grandmother (MGM) reported mother was "'borderline mentally retarded.'" Mother's reunification services as to A.B. were terminated on November 4, 2008; A.B.'s current plan was long term legal guardianship.[2]

---

[2] The detention report in the current matter at one point erroneously reports "mother's rights were terminated on November 4, 2008," as to A.B. In fact, only mother's reunification services as to A.B. were terminated on that date.

As to minor, on July 12, 2011, the social worker contacted Pia Frye of the Inland Regional Center (IRC). Frye last visited mother's home in June; she expressed concern regarding minor's weight, bonding between mother and minor, and mother's placement of minor in a dark room alone while minor was awake. Mother had refused services offered through IRC's Supportive Living Service Program which would have offered to go to "mother's home and provide hands on parenting education and living skills."

On the same date, the social worker visited mother's home. Mother denied any criminal history or mental health issues. She denied being a client of IRC, but reported she worked there as a volunteer. She reported law enforcement had visited her home recently, but that they were friends who had been looking for her boyfriend so that he could repair their squad car.

Mother's home was full of items "strewn about the floor" including "trash, dirty diapers and clothing." Mother had no clean diapers for minor. Mother reported she had no other children; she said A.B. had been miscarried. When the social worker informed mother she would have to take minor into protective custody, mother responded, "'Okay, good that will give me a break.'"

A check of mother's criminal record revealed convictions for shoplifting on April 3, 2008, and assault with a deadly weapon causing great bodily injury on October 17, 2008. Mother's probation on the latter conviction was set to expire on February 17, 2012; a term of that probation required that she participate regularly in mental health services and maintain compliance with her medication regime; according to her probation officer, mother was not complying with those conditions; she had not taken her

4

medication in two years. MGM reported mother displayed numerous indicia of paranoia; mother was fine when she took her medication, but she refused to take it because she believed it was poison.

On July 15, 2011, the date originally scheduled for the detention hearing, mother's counsel requested a one-day continuance so mother's GAL could be in attendance. Mother was not present at the hearing. The court determined, "The Indian Child Welfare Act does not apply."[3]

Mother's GAL appeared at the resumed detention hearing on July 18, 2011; mother was again not present. The juvenile court detained minor. In the jurisdiction and disposition report filed August 3, 2011, the social worker recommended denying mother reunification services pursuant to section 361.5, subdivisions (b) (10) and (12).[4] The social worker again noted "mother confirmed she has no know[n] Native American ancestry."

---

[3] Mother had completed and signed a "Parental Notification of Indian Status" on a JV-130 form, since renumbered ICWA-020, in the juvenile court case regarding A.B., in which she checked the box adjacent to the statement reading: "I have no Indian ancestry as far as I know." In the juvenile dependency petition as to minor, the social worker noted "Mother denied any Native American ancestry in her family." Likewise, in the detention report filed July 14, 2011, the social worker noted that on July 12, 2011, mother had "denied any Native American ancestry in her family."

[4] Section 361.5, subdivision (b)(10) permits the juvenile court to deny a parent reunification services when the parent has had reunification services terminated as to a previous child. Section 361.5, subdivision (b)(12) permits denial of reunification services when the parent has had parental rights terminated as to a previous child.

5

An addendum report filed September 8, 2011, noted mother had missed visitation on August 9, 16, and 23, 2011. During a visit on August 30, 2011, mother laughed at minor saying, "'she's so fucking fat.'" Mother told MGM minor was "'fucked up in the head'" and was going to end up in juvenile hall because she engages in "'destructive behavior.'" Mother attempted to stand minor on her feet. Mother left the visit to speak with a family next door. Halfway through the visit mother started packing up, saying she had appointments to keep; mother was convinced to stay by MGM.

On September 8, 2011, the social worker filed the operative third amended petition. The petition contained allegations as to mother, that she lacked the ability to care for minor (b-1), suffered from untreated mental health issues (Paranoid Schizophrenia) (b-2), engaged in verbal altercations in the presence of minor with her boyfriend (b-3), engaged in criminal activity and was currently on probation (b-5), had an open dependency case regarding A.B. (b-6), the home was kept in an unsanitary condition (b-4), and A.B. had been found to have been abused and/or neglected and minor was at risk of similar harm (j-1).

Mother attended the jurisdiction and disposition hearing on September 13, 2011. The juvenile court found the allegations in the petition true, sustained the petition, and took jurisdiction of minor. The court found "the child is not an Indian Child. The Indian Child Welfare Act does not apply." The court removed custody of minor from mother. The court denied mother reunification services pursuant to section 361.5, subdivision (b)(10) and set the matter for hearing pursuant to section 366.26.

In the Selection and Implementation and Post Permanency Status Review Report filed December 23, 2011, the social worker noted mother had visited with minor on September 26, October 25, November 29, and December 13, 2011.  However, during the latter visit mother became verbally threatening and was removed from the building by security.  Due to the incident occurring during the last visit, the social worker requested mother's visitation be terminated.  The juvenile court granted the request.  At the section 366.26 hearing on May 10, 2012, the juvenile court terminated mother's parental rights and set adoption as the permanent plan.

## DISCUSSION

A.    ICWA

Mother contends the juvenile court's finding that ICWA did not apply resulted in reversible error because the department neglected to have mother complete a Parental Notification of Indian Status upon the filing of the initial petition with respect to minor.[5] The department maintains it was not required to have mother complete and sign *another* Parental Notification of Indian Status because mother had already completed one in the instant case and mother continually denied any Native American ancestry.  We agree with the department.

---

[5] Mother filed a petition for writ of habeas corpus on this issue (case No. E057149), which we ordered considered with this appeal.  We will resolve that petition by separate order

"At the first appearance by a parent . . . in any dependency case . . . the court must order the parent . . . to complete *Parental Notification of Indian Status* (form ICWA-020)." (Cal. Rules of Court, rule 5.481(a)(2).) "'[T]he juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement.' [Citation.]" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)

"'The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation]. We review the trial court's findings for substantial evidence. [Citation.]' [Citation.] "'While the record must reflect that the court considered the issue and decided whether ICWA applies, its finding may be either express or implied." [Citations.]' [Citation.]" (*In re Christian P.* (2012) 208 Cal.App.4th 437, 451.)

Here, mother completed and signed a Parental Notification of Indian Status on June 27, 2007, in the instant case, confirming she did not have any Native American ancestry.[6] The form was apparently completed at mother's first appearance in the case respecting the petition regarding A.B. Although, no additional form was completed when a new petition was filed in the same case to add minor, we hold mother's completion of the Parental Notification of Indian Status in the same case earlier was sufficient to satisfy

---

[6] In her reply brief, mother contends the form was "hardly unequivicoal" because mother marked both boxes confirming that she "may have Indian ancestry" and that she had no Indian ancestry. However, the mark in the box indicating that she "may have Indian ancestry" was scratched out. Thus, it is clear mother intended to check only the latter box.

the juvenile court's obligation. Thus, substantial evidence supported the juvenile court's determination ICWA did not apply.

Mother apparently contends the failure of the juvenile court to require the filing of an additional Parental Notification of Indian Status upon the filing of the new petition violated its *continuing* obligation to inquire as to the applicability of ICWA. (Cal. Rules of Court, rule 5.481(a); § 224.3, subd. (a).) However, we disagree with mother that the juvenile court's continuing obligation requires the filing of multiple ICWA-020 forms in the same case.

Mother cites *In re Robert A.* (2007) 147 Cal.App.4th 982, in support of her contention the juvenile court was required to have her complete another Parental Notification of Indian Status form. However, in that case the father's ICWA documents were filed "in a separate dependency case" and postdated the juvenile court's determination in the case before that ICWA did not apply. (*Id.* at pp. 989-990.) Thus, *Robert A.* is distinguishable because mother's Parental Notification of Indian Status was filed in the same dependency case and preceded the instant juvenile court's determination ICWA did not apply.

Moreover, the department did continue to inquire of mother regarding any Native American ancestry. In both the initial petition and detention report, the social worker noted on July 13, 2011, that mother denied any Native American ancestry. In the jurisdiction and disposition report, the social worker reported that on July 28, 2011, mother again denied any Native American ancestry. The juvenile court's subsequent

9

findings on July 15, and September 13, 2011, that ICWA did not apply were supported by substantial evidence.

B.    GAL

Mother maintains she was deprived of her constitutional and statutory rights to due process when the juvenile court appointed her a GAL purportedly without a noticed hearing and without her participation in making a determination of her mental incompetency. The department responds that the GAL was appointed for mother in this case on June 27, 2007; therefore, mother's appeal from that order is untimely. In addition, the department argues mother forfeited any appellate contention with regard to the appointment of the GAL by failing to object below. Finally, the department asserts substantial evidence supports the appointment of the GAL. We hold mother has forfeited any appellate contention regarding the appointment of the GAL by failing to provide this court with a sufficient record to review the argument. Moreover, we find, to the extent possible on this record, the juvenile court's appointment of the GAL was supported by substantial evidence.

"In a dependency case, a parent who is mentally incompetent must appear by a guardian ad litem appointed by the court. [Citations.] The test is whether the parent has the capacity to understand the nature or consequences of the proceeding and to assist counsel in preparing the case. [Citations.] The effect of the guardian ad litem's appointment is to transfer direction and control of the litigation from the parent to the guardian ad litem, who may waive the parent's right to a contested hearing. [Citations.]" (*In re James R.* (2008) 42 Cal.4th 901, 910)

"Before appointing a guardian ad litem for a parent in a dependency proceeding, the juvenile court must hold an informal hearing at which the parent has an opportunity to be heard. [Citation.] The court or counsel should explain to the parent the purpose of the guardian ad litem and the grounds for believing that the parent is mentally incompetent. [Citation.] If the parent consents to the appointment, the parent's due process rights are satisfied. [Citation.] A parent who does not consent must be given an opportunity to persuade the court that appointment of a guardian ad litem is not required, and the juvenile court should make an inquiry sufficient to satisfy itself that the parent is, or is not, competent. [Citation.] If the court appoints a guardian ad litem without the parent's consent, the record must contain substantial evidence of the parent's incompetence. [Citation.]" (*In re James R.*, *supra*, 42 Cal.4th at pp. 910-911.)

First, we note mother has failed to provide an adequate record to permit review of the appointment of the GAL. The record reflects the juvenile court appointed the GAL at the detention hearing with respect to A.B. on June 27, 2007. The juvenile court trailed the detention hearing regarding minor so that mother's GAL could attend. Mother has failed to augment the record to include the detention report and the reporter's transcript of the detention hearing with respect to A.B.[7] As such, mother has failed to provide this court with a record sufficient with which to review her due process challenge. (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 ["It is the duty of an

---

[7] The detention report with respect to A.B. would presumably explain why the department believed the appointment of a GAL was necessary. Contrariwise, if mother's counsel believed the appointment of a GAL was necessary, the explanation would most likely appear in the reporter's transcript of the detention hearing.

appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. [Citation.]"].)

Second, to the extent mother is maintaining the juvenile court was required to hold another hearing to appoint the GAL with respect to the new petition regarding minor, we disagree. Like her argument that the department should have had mother complete another Parental Notification of Indian Status upon the filing of the petition with respect to minor, her argument the court should have been required to have held a new hearing regarding appointment of the GAL fails. The juvenile court is not required to reevaluate the continuing validity of the appointment of a GAL on its own motion. Here, mother failed to attend either of the scheduled detention hearings regarding minor. Thus, she failed to challenge the continued applicability of the order appointing her a GAL in the case. Moreover, mother's counsel specifically requested the original detention hearing be continued to permit attendance by the GAL. Thus, mother's counsel acknowledged the continued propriety of the order appointing the GAL.

Finally, from what evidence we have regarding mother's mental capacity, appointment of the GAL would appear to have been supported by substantial evidence. A psychologist who had evaluated mother on August 15, 2007, regarding the petition with respect to A.B. determined she was "'functioning in the mild range of retardation'" and that her "'ability to take care of a child is extremely low . . . .'" He opined she would not benefit from services. It was reported mother suffered from Schizophrenia.

12

Mother's documented behavior in the proceedings regarding minor betray a sufficient degree of mental incapacity such that appointment of the GAL would have been appropriate. Law enforcement investigating the initial complaint reported mother appeared to be developmentally delayed and had a difficult time answering questions. Mother denied the existence of A.B., reporting that he had been miscarried. Mother denied she was a client of IRC, instead asserting she worked there as a volunteer. She told the social worker the law enforcement officers who had responded to the initial complaint were her friends who were merely looking for her boyfriend to repair their police vehicle. Mother's statements denying any criminal or mental health history were thoroughly repudiated by the record in this case.

When the social worker informed mother she was going to take minor into protective custody, mother responded that would be good as it would give her a break. Mother was on probation with a requirement that she participate in mental health services and maintain her medication regime. Mother's probation officer reported mother was not compliant with that condition of her probation and mother had not taken her medication in two years. MGM reported mother exhibited many symptoms of paranoia, which resolved when mother took her medication; however, mother refused to take her medication because she believed it was poison. Mother stated that then five-month-old minor was "'fucked up in the head'" and would end up in juvenile hall because she engaged in "'destructive behavior.'" Thus, substantial evidence supported a determination that mother had a profound degree of mental incapacity. (*In re Esmeralda S.* (2008) 165 Cal.App.4th 84, 93-95 [Even if due process error occurred, the appointment

13

of a GAL is subject to harmless error analysis.]; *In re James R.*, *supra*, 42 Cal.4th at pp. 917-919 [same].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

14