Filed 12/23/13  In re D.M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.M. et al., Persons Coming Under the Juvenile Court Law. | B246614 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK93405) |
| Plaintiff and Respondent, | |
| v. | |
| J.M., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sherri Sobel, Juvenile Court Referee.  Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kimberly Roura, Associate County Counsel, for Plaintiff and Respondent.

J. M. (father) appeals from the dependency court's judgment of December 14, 2012 declaring his daughters, D. M. and S. M. dependents of the court under Welfare and Institutions Code section 360.[1]  He contends:  (1) it was prejudicial error to admit the out-of-court statements of Edwin S.; and (2) substantial evidence does not support the sustained allegations.  We affirm.

## STATEMENT OF FACTS AND PROCEDURE

D. was born in 2007 and S. was born in 2009 to father and S. B. (mother), who were married and lived together.[2]  Father had a history of criminal convictions, including carrying a concealed weapon in a vehicle and burglary.  During a physical altercation in 2009, father hit mother in the children's presence.

On April 8, 2012, Edwin, an employee of a vehicle repossession company, went to the family's apartment to repossess mother's car.  The children were at home.  Edwin hitched the car to his tow truck.  Father came down and engaged in a heated, angry argument with Edwin.  Father returned to the apartment and retrieved a gun.  Gunshots were fired, shattering the tow truck's rear windshield.  Father fled from the scene. A bullet jacket was found on the front passenger floor board.  Edwin told the police that father was the shooter.  Father was arrested for attempted murder.

The Department of Children and Family Services (Department) detained the children with mother on May 4, 2012, and a section 300 petition was filed.  As originally filed, the petition alleged father brandished a loaded handgun at Edwin and repeatedly fired at Edwin's tow truck while Edwin was in it.

On December 14, 2012, the dependency court amended the petition by deleting the allegations which placed the gun in father's hands and declared the children dependents of the court based on sustained allegations, under section 300, subdivision (b), that, inter alia, the children suffered, or were at substantial risk of suffering, serious physical harm

---

[1]    All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]    Father was found to be the children's presumed father.

or illness as a result of father's failure or inability to adequately supervise or protect them, in that "on 04/08/2012, the children['s] father . . . placed the children in a detrimental and endangering situation, in that the father engaged in a violent altercation with an unrelated adult male, Edwin [S.], in which a loaded handgun at the scene was fired at the unrelated adult male's tow truck, shattering the rear windshield of the vehicle, while the unrelated adult male was in the vehicle. The violent altercation occurred while the children were present in the children's home. . . ." The court stated, "[t]hese children have parents who get involved in drugs, domestic violence, gang-related incidents. And the fact they are not present does not mean they're not in danger. [¶] They are slightly removed from the danger, certainly, if they're not present and, thank God, they're not there. But that doesn't alter the behavior of the parents. We look at the risk to the children and the behavior of the parents. [¶] . . . [¶] A repo man came to take back this family's vehicle. [Mother] stated [father] came downstairs and had a conversation. An argument ensued and they both began to curse at each other. [Mother] turned away momentarily and heard two gunshots. She did not know where her husband or the victim went to after that. She didn't know who had the gun but [father] took off. He got in another vehicle and he took off. After another argument at the vehicle itself, [father's] anger continued to escalate. He began to curse at the victim and call him names. The victim told [mother and father] he needed the keys or else they would be liable for payment. [Father] immediately told [mother] to get the thing from upstairs. When [mother] refused, [father] stated, I'm going to get the thing and I'm going to fuck you up. [¶] . . . I will let the criminal court decide whether or not this gentleman fired any shots, but I have to tell you that's about as violent as it gets in the world that I can see where these children might have . . . been in the middle of this or been in the car or been in the apartment."

The children were removed from father's custody and placed in home-of-parent mother under Department supervision, with the Department to provide family maintenance services. Father was granted monitored visitation.

## DISCUSSION

1. *Evidentiary ruling.*

Father contends it was an abuse of discretion and violation of due process to admit Edwin's out-of-court statement to the police in which he identified father as the shooter. We disagree with the contention.

a. *Due process and section 355.*

"[S]ocial studies are both admissible and competent evidence on which to base a finding of jurisdiction pursuant to section 300." (*In re Malinda S.* (1990) 51 Cal.3d 368, 385.) "[P]arties in civil proceedings . . . have a due process right to cross-examine and confront witnesses." (*Id.* at p. 383 fn. 16.) "Placing upon the parent the burden to subpoena those witnesses" does not violate due process. (*Id.* at p. 385.)

Section 355 provides in pertinent part: "(b) A social study prepared by the petitioning agency, and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based, to the extent allowed by subdivisions (c) and (d). [¶] . . . [¶] (c) (1) If any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions: [¶] . . . [¶] (C) The hearsay declarant is a peace officer . . . [or] a social worker . . . . [¶] (D) The hearsay declarant is available for cross-examination. . . . [¶] (d) This section shall not be construed to limit the right of any party to the jurisdictional hearing to subpoena a witness whose statement is contained in the social study . . . ."

Where the declarant is not available for cross-examination, a hearsay objection under section 355 does not "render [the hearsay statements] inadmissible. Rather, the objection mean[s] that uncorroborated, the hearsay statements [do] not constitute substantial evidence and could not be used as the exclusive basis for finding jurisdiction under section 300. [Citation.]" (*In re B.D.* (2007) 156 Cal.App.4th 975, 984.)

4

"Corroborating evidence is evidence which supports a logical and reasonable inference that the act described in the hearsay statement occurred." (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1280-1281.) Slight evidence, direct or indirect, connecting the parent to the act is sufficient corroboration. (*Ibid.*; accord, *In re Christian P.* (2012) 208 Cal.App.4th 437, 448.) Corroborating evidence need not itself establish the precise facts in the hearsay statement and may include inferences from the circumstances of the transaction and from false statements to authorities. (*In re Christian P.*, *supra*, 208 Cal.App.4th at p. 448.)

   b. *Proceedings on father's section 355 objection to admission of Edwin's statement.*

Edwin's statement was contained in a police report that was attached to a social worker's report. Father objected to the admission of the statement pursuant to section 355. "I am objecting to the statements of [Edwin] as a hearsay declarant under . . . section 355. Although . . . his statement is contained within a police report, it is not the police officer who is the hearsay declarant. It is [Edwin] who's the hearsay declarant. And I would need to cross-examine him . . . [on] whether or not he could actually identify [father] as the shooter . . . ." Subpoenaed by the Department, Edwin came to court twice, but he did not testify, because the case was continued. Father did not advise the court on those days that Edwin was present in court and available to testify. Subsequently, father was granted continuances to subpoena Edwin for cross-examination. Father did not subpoena him.

On December 14, 2012, seven months after the petition was filed, the court ruled that, as the police report was admissible in evidence under section 355, it was up to father to subpoena the people whose statements appeared in the report if he wanted to cross-examine them. Father was granted another continuance to subpoena Edwin, but, if father would proceed that day, the court would amend the allegations of the petition by deleting father as the shooter. Father elected to forego the continuance and go to trial that day. He argued he was not at the scene when the shooting happened, he did not own or fire a

gun, there was no violent altercation, and the children were not at risk because they were not present during the incident.

### c. *Relevant evidence.*

#### (1) *Edwin's statements.*

Edwin went to the family's address to repossess mother's car. After attaching the car to his tow truck, he went to the apartment and advised mother he was repossessing her car. Father was present in the apartment, and he became irate. Father and mother followed Edwin downstairs to retrieve property from the car, but father's anger escalated. Father cursed and called Edwin names. Edwin told them he needed the keys or else they would be liable for payment. This upset father, and father immediately told mother to " ' go get the thing from upstairs.' " When mother refused, father stated, " 'I'm going to get the thing and I'm going to fuck you up.' " Father went upstairs and returned with his hand in his right pocket. Edwin began to drive away with the car in tow. Father pulled out a gun from his right pants pocket, aimed it toward Edwin, and fired at least twice, shattering the rear windshield of the tow truck. Father fled the scene.

#### (2) *Mother's statements.*

Mother told Officer Avelar on April 8 that, at 7:00 p.m., she discovered her car, which was parked in front of her apartment building, was being hooked up to a tow truck in the course of being repossessed by Edwin. Father came downstairs and talked to Edwin about retrieving the property that was inside the car, and an argument ensued. Father and Edwin cursed at each other. Mother turned away momentarily and suddenly heard two gunshots. Mother told Officer Avelar that father had fled.

On April 10, 2012, mother told the social worker she and father went downstairs to get her personal belongings out of her car before it was towed. Father and the tow truck driver got into a heated argument. Father told mother to go upstairs and get something, but she did not know what he was talking about. Father went upstairs "and supposedly got his gun. . . . [Edwin] had a gun as well." She turned away and then heard shots, whereupon, father left the scene.

On May 28, 2012, mother told the social worker Edwin knocked on the apartment door and asked mother for the car keys as his company told him to repossess the car. Mother followed him to her car to retrieve car seats and other personal belongings. Edwin refused to let her retrieve her things. Father arrived a few minutes later and engaged in an angry verbal altercation with Edwin. Mother started to go upstairs to check on the children, when she heard several gun shots.

(3) *Father's statements.*

Father told the social worker on May 28, 2012 that he was involved in a verbal altercation with Edwin. Father denied owning or brandishing a gun, and he stated he had already left the scene before any shots were fired.

d. *Admission of Edwin's statement was not an abuse of discretion or violation of due process.*

A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.) A judgment will not be reversed by reason of an erroneous admission of evidence unless a miscarriage of justice is shown. (Evid. Code, § 353, subd. (b); *Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 456.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Where substantial evidence supports the order, there is no abuse of discretion. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.) Issues of fact and the credibility of witnesses are questions for the trial court. (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 495.)

The court properly admitted the police report, including Edwin's statements contained therein, because the police report was admissible under section 355, subdivision (b).

As Edwin's statement in the police report identifying father as the shooter was corroborated, the court properly considered it along with the other evidence supporting the sustained allegations. It is reasonable to infer that father had a gun and was the

7

shooter, from mother's statements father went upstairs "and supposedly got his gun. . . . [Edwin] had a gun as well" and father fled immediately after the shots were fired, and by father's denial he had a gun or was there when the shots were fired. Moreover, it may be inferred the tow truck or tow truck driver was the intended victim of the shooting, because the shooting shattered the truck's rear windshield and a bullet jacket was found on the front seat floor board. The facts the tow truck or Edwin was the target and the shooting occurred when father was irate with Edwin suggest father was the shooter. This evidence amply corroborates Edwin's identification of father as the shooter.

Further, the court did not sustain an allegation identifying father as the shooter, but rather sustained an allegation that a handgun was fired. Without dispute, substantial evidence supports that sustained allegation. Thus, even without the identification of father as the shooter, there was ample evidence supporting the allegation the court sustained.[3]

2. *Substantial evidence supports the finding the children were at risk of harm.*

Father contends substantial evidence does not support the finding the children were at risk of harm under section 300, subdivision (b), even with Edwin's statements in evidence. We disagree with the contention.

In determining whether an order is supported by substantial evidence, "we look to see if substantial evidence, contradicted or uncontradicted, supports [it]. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent

---

[3]    We disagree with the Department's contention father waived his right to cross-examination by agreeing to go forward with the trial with the understanding the court would consider Edwin's statements without cross-examination. Under section 355, Edwin's statements were admissible but could not be used as the exclusive basis for finding jurisdiction in the absence of cross-examination. As the court did not indicate it would use Edwin's statements as the exclusive basis for jurisdiction, father did not waive his objection that the statements could not be used as the exclusive basis for jurisdiction.

judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 52 Cal.App.4th 183, 321.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Section 300, subdivision (b), in pertinent part, describes a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or . . . by the willful or negligent failure of the parent or guardian to provide the child with adequate . . . medical treatment . . . ." "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) The purpose of the juvenile court law is to provide "maximum safety and protection for children" being harmed or who are at risk of harm. (§ 300.2.)

Edwin's and mother's statements provide substantial evidence father engaged in a violent, heated altercation with Edwin and fired a handgun at Edwin. In this incident, he had a handgun in the home, became enraged, and fired it at least twice at Edwin. During the loud, angry, and escalating dispute, the children could have come running down to the street out of concern for the parents and been injured. In a prior incident, father hit mother in the presence of the children, indicating a history of engaging in physical altercations, escalation of temper, and use of violence in circumstances where children could be injured in the crossfire. Moreover, father's prior conviction for a gun offense shows he had a history of possessing guns. The presence in the home of a gun owned by one who has a history of angry altercations and violence, including firing a handgun when enraged, creates a substantial risk of serious physical harm to children who live in the home. It may be inferred from the fact father denied his role in the endangering incident that father was unrehabilitated. This is substantial evidence supporting the findings under section 300, subdivision (b) that father's conduct engaging in a violent altercation in which a loaded handgun was fired creates a risk of harm to the children.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.