[No. B236528. Second Dist., Div. Three. July 23, 2012.]

In re CHRISTIAN P. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
SANDRA D., Defendant and Appellant.

438

COUNSEL

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Acting County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**CROSKEY, J.**—Appellant Sandra D. (mother) appeals from a judgment declaring her two sons, Christian P. and Antonio R., dependents of the court based on findings made by the trial court pursuant to Welfare and Institutions Code section 300, subdivision (b).[1] Mother contends (1) that the trial court erred in ruling that the Los Angeles County Department of Children and Family Services (DCFS) need not comply with section 827 before using and disseminating evidence from an unrelated dependency case and in admitting such evidence in her case; (2) that the evidence was insufficient to support the trial court's jurisdictional finding that the children suffered, or were at a substantial risk of suffering, serious physical harm or illness; and (3) that the trial court erred in finding that DCFS complied with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). She seeks to reverse the ruling that section 827 does not apply and reverse the judgment based on the finding that her children were subject to dependency jurisdiction pursuant to section 300, subdivision (b). In the alternative, if we hold that the jurisdictional findings are supported by substantial evidence, she seeks to remand the case with instructions that the trial court order DCFS to comply with ICWA's notice and inquiry provisions.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has three children, Natalia B. (born in Oct. of 1998), Christian (born in Aug. of 2001), and Antonio (born in Feb. of 2005). Natalia has lived with her father, Juan B., since 2008 after mother was arrested. Neither Natalia nor her father is a party to the underlying petition or this appeal. This appeal only involves Christian and Antonio.

Christian and Antonio came to DCFS's attention on March 22, 2011, via a referral alleging general neglect and drug use in the home. In addition to

---

[1] All section references herein are made to the Welfare and Institutions Code unless otherwise noted.

mother and her two sons, mother's boyfriend, Carnell B.; Carnell's friend, K.J.; K.J.'s son, K.J., Jr.; and K.J.'s girlfriend, Traci W., all lived in the home.[2] K.J. and Traci also have a daughter, Amirah J. However, it is unclear from the record whether Amirah also lived in the home. When DCFS's social worker arrived at the home to initiate an investigation, K.J. answered the door but would not allow the social worker into the home; however, he provided mother's cell phone number to the social worker. When mother returned, she allowed the social worker to enter and explained that she had left Christian and Antonio with K.J. while she was out running errands with Carnell.

DCFS interviewed mother, K.J., Christian and Antonio. Mother denied she had a history of drug use and stated that she had never seen K.J. smoking or using drugs in her home. Mother stated that no one in the home was employed or pays rent. Mother believed that Traci, who had moved out a few days prior, was mentally ill and had made the allegations against her and the others. Christian stated that K.J. smoked cigarettes outside but denied seeing any drug use in the home. K.J. also denied any drug use but admitted to smoking cigarettes outside. K.J. also stated that he slept in the garage then showed the social worker where he slept.

DCFS followed up with a visit to the home about one month later. A neighbor informed the social worker that mother had not been home for a few days due to an alleged gang altercation involving Carnell and K.J. However, mother was home and explained that she had left previously due to the altercation, fleeing with her children, Carnell, and K.J. She stated that Carnell is African-American and when he and K.J. went to the store to purchase milk and a pack of cigarettes, some "cholos" across the street began to call Carnell derogatory names. When they left the store, the alleged gang members followed them home and attempted to punch Carnell. Carnell defended himself and he and K.J. ran into the house. When the neighbor attempted to intervene, the alleged gang members punched him in the face. Mother stated she was frightened that they would return so she left. She believes the incident was not a gang problem but was a race problem. She later contacted Christian's father, Eloy P., and asked him to take care of Christian for a little while and she sent Antonio to stay with friends in San Bernardino. The children were out of school for a week due to this incident. Mother was not willing to stop seeing Carnell as a safety precaution.

DCFS interviewed Christian again when his father brought him into the DCFS office on April 28, 2011. He informed the social worker that, before he went to live with his father, he, Antonio, mother, Carnell, K.J. and Traci had

---

[2] In addition to the children, we refer to all adults throughout this opinion by their first names as a matter of simplicity and clarity. No undue familiarity is intended.

been living in various motels. He stated he was unhappy because they avoided going outside due to being afraid of the alleged gang members. He did not want to return to mother because he did not feel safe there and because he and Antonio did not get enough food. He stated that he and Antonio would save food from their lunches in order to have something to eat for dinner. Mother would go out in the evenings and leave them with Carnell for extended periods of time. Carnell would call someone named "Johnny" who would bring money so they could buy some food.

DCFS filed a petition on May 3, 2011, which alleged, as amended, count b-2: "The children['s] . . . mother . . . created a detrimental & endangering home environment for the children in that the mother allowed individuals, including mother's male companion Carnell . . . and unrelated adult male [K.J.] . . . , with criminal records[,] propensities toward violence and drug use, to be around her children and has, at times, left the children in the care of these individuals. Such a detrimental and endangering situation established for the children by the mother endangers the children's physical health and safety and places the children at risk of physical harm, damage and danger." The petition also included count b-3, which stated, "The children['s] . . . mother . . . has a history of illicit drug use and is a current user of methamphetamine, which renders the mother incapable of providing regular care of the children. The mother's illicit drug use endangers the children's physical health and safety and places the children at risk of physical harm, damage and failure to protect." The trial court found that DCFS had made a prima facie case for detention, released Christian to his father and placed Antonio in foster case.

DCFS filed a jurisdiction/disposition report on May 23, 2011 (the report). It is this report that contains the hearsay statements mother contends triggered section 827. The report incorporated statements made by Traci and Amirah while they were being interviewed by the DCFS social worker in the concurrently filed case, case No. CK48285, with respect to K.J., Jr., and Amirah. Traci stated that K.J. and mother smoked methamphetamines in one of the bedrooms while the children were home in the living room. Traci stated that K.J. smoked methamphetamines daily. Amirah stated that she had seen Traci and mother smoke the "greenish-brown tree," which she also referred to as "blunts," in the front and backyards of the home.

The report also contained followup statements made by Christian and mother. Christian informed the social worker that mother would leave him and his brother with K.J. and Traci and that they were always hitting K.J., Jr. Mother stated that Traci accused her of having an affair with K.J.

Mother objected to the statements made by Traci and Amirah, which were incorporated in the report from case No. CK48285, stating that DCFS must

first comply with section 827. After changing its ruling several times, the trial court ultimately concluded that section 827 did not apply[3] and the evidence was admissible as part of the social study report.

The trial court ordered DCFS to provide family preservation services for mother and to release Antonio to her after she had three consecutive clean drug tests. According to DCFS's September 15, 2011 report, DCFS was unable to confirm that mother no longer lived with Carnell or K.J. DCFS was unable to verify the conditions of mother's apartment as well. Mother failed to provide three clean consecutive drug tests. Although she tested negative on April 8, 2011, and May 20, 2011, she failed to appear for testing on July 22, 2011, and August 24, 2011, and tested positive for methamphetamines and amphetamine on August 17, 2011. Christian's father expressed concerns stating that mother appeared anxious during visits with Christian, had lost a substantial amount of weight and had large sores on her face. DCFS determined that Antonio could not yet be returned to mother.

On September 15, 2011, the trial court sustained the petition as amended and declared Christian and Antonio to be dependents of the court. Christian was placed with his father and Antonio was placed in foster care. The court ordered family reunification services with respect to both children, drug and alcohol rehabilitation with weekly random drug testing and parenting classes for mother. She was allowed monitored visitation. The trial court also found that DCFS had complied with ICWA and that it did not apply. Mother filed a notice of appeal on September 27, 2011.

## ISSUES ON APPEAL

Mother contends (1) that the trial court erred in ruling that DCFS need not comply with section 827 before using and disseminating evidence from an unrelated dependency case and in admitting such evidence; (2) that the evidence was insufficient to support the trial court's jurisdictional finding that the children suffered, or were at a substantial risk of suffering, serious physical harm or illness; and (3) that the trial court erred in finding that DCFS complied with ICWA's inquiry and notice provisions. She seeks to reverse the ruling that section 827 does not apply and reverse the judgment based on the finding that her children were subject to dependency jurisdiction

---

[3] The juvenile court referee originally sustained mother's objections to the information from case No. CK48285 and taking judicial notice of the documents from that case. It then reversed its decision and ruled that it could take judicial notice of the documents and that DCFS need not comply with section 827. It later reversed its decision again, determining that DCFS must comply with section 827. Finally, in a separate ruling, Judge Michael Nash determined that DCFS need not petition the court pursuant to section 827. As a result of that ruling, the juvenile court referee reversed the prior ruling.

pursuant to section 300, subdivision (b). In the alternative, if we hold that the jurisdictional findings are supported by substantial evidence, she seeks to remand the case with instructions that the trial court order DCFS to comply with ICWA's notice and inquiry provisions.

## DISCUSSION

### 1. *DCFS Was Not Required to File a Petition Seeking Access to the Juvenile Case File in Case No. CK48285 Under Section 827*

Mother contends that before using and disseminating evidence from the unrelated dependency case, case No. CK48285, in the petition filed in this case, DCFS was required to comply with section 827.[4] She asserts that the trial court erred in ruling that section 827 did not apply to the evidence at issue and in admitting the evidence as a result.

■ "It is the express intent of the Legislature 'that juvenile court records, in general, should be confidential.' [Citation.] The strong public policy of confidentiality of juvenile proceedings and records has long been recognized. [Citations.] Courts have recognized, however, that this policy of confidentiality is not absolute." (*In re Keisha T.* (1995) 38 Cal.App.4th 220, 231 [44 Cal.Rptr.2d 822].) "That juvenile court records are confidential, but not absolutely so, is reflected in section 827." (*Ibid.*)

■ Section 827 provides that certain persons may inspect juvenile court records without a court order. These persons include "(E) [t]he attorneys for the parties . . . who are actively participating in criminal or juvenile proceedings involving the minor. [¶] [and] (F) [t]he county counsel, city attorney, or any other attorney representing the petitioning agency in a dependency action." (§ 827, subd. (a)(1)(E) & (F); see Cal. Rules of Court,

---

[4] DCFS makes two main arguments in opposition to mother's contentions, neither of which has any merit. DCFS first argues that mother "forfeited her right to object to the [dependency] court's grant of judicial notice of documents from [the companion case]." Mother is not asserting that the trial court erred in taking judicial notice of such documents. Taking judicial notice of the records of any court of this state is clearly permitted by Evidence Code section 452, subdivision (d). But such notice is limited to the existence of the documents and is not the same as taking notice of the truth of any matters or facts stated therein. (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375 [127 Cal.Rptr.3d 362].) Mother clearly objected to the admission of hearsay evidence taken from those documents and inserted into DCFS's jurisdictional, dispositional and other reports filed in this case. Therefore, she has not forfeited her right to appeal the admission of such evidence at the hearing.

DCFS argues next that mother does not have standing to object to the introduction of the documents and information because she is not aggrieved. Mother has the right to object to hearsay evidence contained in DCFS's social study reports pursuant to section 355, subdivision (c).

rule 5.552(b)(1)(F) & (H).) With respect to individuals not included in the list of specified persons who may access a case file without a court order, section 827 includes procedures through which such individuals may petition a court to request such access. (*In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1541–1542 [24 Cal.Rptr.3d 16].)

Mother contends that section 827, subdivision (a)(1)(F), which allows a county counsel, city attorney or other attorney representing DCFS to access juvenile court files, limits such attorney's access to the specific case to which the attorney has been appointed. Thus, DCFS was required to petition the court for an order permitting the attorney acting on its behalf in her case to access and utilize the statements from case No. CK48285, a case for which such attorney was not appointed. Mother cites no authority supporting her contention, however, and we disagree. As mother's contention involves the interpretation and application of section 827, our review is de novo. (*Prentice v. Board of Administration* (2007) 157 Cal.App.4th 983, 989 [69 Cal.Rptr.3d 167].)

Adopting mother's interpretation of section 827 goes against common sense. The language found in the current subdivision (a)(1)(F) was added to section 827 in 2007. (Sen. Bill No. 39 (2007–2008 Reg. Sess.).) Were we to adopt mother's interpretation, it would mean that prior to 2007, DCFS's attorneys were not permitted to access the files for cases to which they had been appointed. However, DCFS's attorneys were and still are permitted to access juvenile case files for cases to which they have been appointed pursuant to subdivision (a)(1)(E), which limits such access to those attorneys "who are actively participating in criminal or juvenile proceedings involving the minor."

Senate Bill No. 39 (2007–2008 Reg. Sess.) amended section 827 and was drafted "to *increase* access to the records of children in the state that [*sic*] have been killed as a result of abuse or neglect." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 39 (2007–2008 Reg. Sess.) as amended June 28, 2007, p. 1, italics added.) The language in current section 827, subdivision (a)(1)(F) was added to Senate Bill No. 39 by an amendment on June 12, 2007, and was described as "add[ing] county counsel, city attorney or other attorneys representing the petitioning agency in dependency actions to the list of individuals who may inspect juvenile court files." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 39 (2007–2008 Reg. Sess.) as amended June 12, 2007, p. 2.) We do not read this addition to section 827 as being redundant. Rather, it was an expansion of the list of individuals who have access to inspect juvenile court files. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 39 (2007–2008 Reg. Sess.) as amended June 18, 2007.) As a result, we conclude that pursuant to section 827,

subdivision (a)(1)(F), DCFS's attorneys are permitted to access juvenile court files generally, and therefore the attorney in this case was not required to petition the trial court to request access to the file for case No. CK48285.

## 2. *Substantial Evidence Supports the Trial Court's Jurisdictional Findings*

Mother contends next that the evidence was insufficient to support the trial court's jurisdictional finding that her children suffered, or were at a substantial risk of suffering, serious physical harm or illness. In support of her contention, mother argues that the trial court erred in admitting hearsay statements from case No. CK48285, which were included in DCFS's social study reports, into evidence and relying on such evidence to make its jurisdictional findings.

" 'A social study prepared by the petitioning agency, and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based, to the extent allowed by subdivisions (c) and (d).' [Citation.] Our Supreme Court instructs that such a study 'fits within the class of "legally admissible" evidence on which a court can rely in a jurisdictional hearing, despite the fact that a social study is itself hearsay and may contain multiple levels of hearsay.' [Citation.] Only '[i]f any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study' may the specific hearsay evidence 'be [in]sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based . . . .' [Citation.]" (*In re E.B.* (2010) 184 Cal.App.4th 568, 577 [109 Cal.Rptr.3d 1]; see § 355, subds. (c) & (d).[5])

Mother asserts that the hearsay declarants were not made available for cross-examination and DCFS neither denies her assertion nor argues that any one of the other exceptions was met. Mother objected to the hearsay evidence

---

[5] Section 355 provides that "[a] social study prepared by the petitioning agency, and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based," with certain limitations. (§ 355, subd. (b).) "If any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions: [¶] (A) The hearsay evidence would be admissible in any civil or criminal proceeding under any statutory or decisional exception to the prohibition against hearsay. [¶] (B) The hearsay declarant is a minor under the age of 12 years who is the subject of the jurisdictional hearing. . . . [¶] (C) The hearsay declarant is a peace officer . . . , a health practitioner . . . , a social worker . . . , or a teacher . . . . [¶] (D) The hearsay declarant is available for cross-examination." (§ 355, subd. (c)(1)(A)–(D).)

at trial. As a result, the hearsay statements were "not render[ed] . . . inadmissible. Rather, the objection meant that uncorroborated, the hearsay statements did not constitute substantial evidence and could not be used as the exclusive basis for finding jurisdiction under section 300. [Citation.]" (*In re B.D.* (2007) 156 Cal.App.4th 975, 984 [67 Cal.Rptr.3d 810].)

■ "The question before us, then, is whether there was corroborating evidence in this record which could support the witnesses' hearsay statements sufficiently to sustain a jurisdictional finding. Corroborating evidence is '[e]vidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point.' [Citation.] In this context, corroborating evidence is that which supports a logical and reasonable inference that the act described in the hearsay statement occurred. [Citation.]" (*In re B.D., supra,* 156 Cal.App.4th at p. 984.)

■ This standard is analogous to the rule in criminal law requiring independent corroborative proof of accomplice testimony. (*In re B.D., supra,* 156 Cal.App.4th at pp. 984–985.) Thus with respect to dependency jurisdictional findings, corroborative evidence, whether direct or circumstantial, (1) is sufficient if it tends to connect the allegedly offending parent with the alleged negligent act even though it is slight and " 'entitled, when standing by itself, to but little consideration [citations], nor does it need to establish the precise facts' " in the hearsay statements; (2) is sufficient if it tends to connect the allegedly offending parent with the alleged negligent act and the parent's " 'own statements and admissions, made in connection with other testimony, may afford corroboratory proof sufficient' " to find jurisdiction; (3) need not " 'go so far as to establish by itself, and without the aid of the testimony of [the hearsay declarant], that the [allegedly offending parent] committed the [negligent act] charged' "; (4) may include the allegedly offending parent's " 'own testimony and inferences therefrom, as well as the inferences from the circumstances surrounding the entire transaction' "; and (5) may consist of "[f]alse or misleading statements to authorities . . . or as part of circumstances supportive of corroboration." (*Ibid.*) " ' "[W]hether the corroborating evidence is as compatible with innocence as it is with guilt is a question of weight for the trier of fact [citations]." [Citation.]' [Citation.]" (*Id.* at p. 985.) "Using these standards, there is evidence in [the appellate] record which, if considered by the trial court, could have corroborated the statements of the [two hearsay declarants at issue]." (*Ibid.*)

■ Section 300, subdivision (b), states that the following will cause a child to fall under the jurisdiction of the court and be adjudged a dependent of such court: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect

the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse." " 'The statutory definition consists of three elements: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.' [Citation.] The third element 'effectively requires a showing that at the time of the jurisdiction hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]' [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 829 [36 Cal.Rptr.3d 411].) But, in certain circumstances, an initial exercise of dependency jurisdiction under section 300, subdivision (b), may be satisfied by a showing that the child has suffered serious physical harm or abuse alone. (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1261 [108 Cal.Rptr.3d 611].)

As mother's argument relates to the hearsay statements of Traci and Amirah regarding mother's alleged illicit drug use, we address count b-3 first. Count b-3 stated, "The children['s] . . . mother . . . has a history of illicit drug use and is a current user of methamphetamine, which renders the mother incapable of providing regular care of the children. . . ."

Although the statements included in DCFS's report are hearsay, these statements, together with other evidence in the record, provide sufficient corroboration amounting to substantial evidence of mother's drug use. Traci stated that mother smoked methamphetamines while the children were home; Christian's father stated that mother was anxious during visits, lost a lot of weight rapidly, and had sores on her face; and mother tested positive for methamphetamines once and missed two drug tests, which are treated as positive. Although neither the hearsay statements nor mother's single positive drug test and two missed tests would necessarily be sufficient to support a finding that mother was abusing methamphetamines, the evidence, when examined as a whole, supports such a finding.

There is also substantial evidence showing that mother's use of methamphetamines rendered her incapable of providing regular care of the children. Mother was unemployed and not paying rent on her home. After the altercation involving Carnell, K.J. and the alleged gang members, mother withdrew the children from school and lived transiently in motels with them. Although this was done allegedly to protect the children and herself, nowhere in the record does it state that she contacted the police about the incident. Christian stated that mother would leave the children at the motel with Carnell and K.J. for extended periods of time, that the children did not have enough to eat and that they were afraid to go outside. Christian also stated that he did not wish to return to mother's care as a result. From this evidence,

in total, it is logical and reasonable to infer that the children are at risk of suffering severe physical harm or illness as a result of mother's inability to provide regular care for them due to her illicit drug use. Therefore the trial court's finding was adequately supported by the record.

As we have determined that the trial court's finding with respect to count b-3 was supported by substantial evidence, we need not review mother's contentions regarding count b-2.[6] "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [90 Cal.Rptr.3d 44].)

### 3. DCFS Failed to Fully Comply with ICWA

Mother contends that DCFS failed to provide the Navajo Nation with all available information required to effectuate meaningful notice pursuant to ICWA. She asserts that the trial court erred when it found that DCFS had complied with these notice requirements and that ICWA did not apply. She seeks a remand of the case with instructions to the trial court to order DCFS to comply with ICWA.

"The United States Congress enacted ICWA to respond to a crisis in which large numbers of Indian children were being removed from their families for placement in non-Indian homes. [Citation.] ICWA was designed to protect the best interests of Indian children and promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families by state courts and the placement of such children in foster or adoptive homes. [Citation.] [¶] At the

---

[6] DCFS filed a notice of cross-appeal on November 23, 2011. In addition to opposing mother's arguments, DCFS contends that the trial court erred in not finding that the children were described by section 300, subdivision (b) by virtue of mother's failure to protect Christian from Carnell when Carnell tossed Christian into the pool. However, we decline to reach this issue as we find the trial court's assertion of jurisdiction based on other grounds was supported by substantial evidence.

heart of ICWA are its jurisdictional provisions over child custody proceedings[7] involving Indian children domiciled both on and off the reservation. [Citation.]" (*In re Jack C.* (2011) 192 Cal.App.4th 967, 975–976 [122 Cal.Rptr.3d 6].)

■ "Among ICWA's procedural safeguards is the duty to inquire into a dependent child's Indian heritage and to provide notice of the proceeding to any tribe or potential tribes, the parent, any Indian custodian of the child and, under some circumstances, to the Bureau of Indian Affairs." (*In re G.L.* (2009) 177 Cal.App.4th 683, 690 [99 Cal.Rptr.3d 356].) To comply with these notice requirements, DCFS was required to (1) identify any possible tribal affiliations and send notice to those tribes; and (2) submit copies of such notices, including return receipts, and any correspondence received from the tribes to the trial court. (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 739–740 [109 Cal.Rptr.2d 267].)

"The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.] We review the trial court's findings for substantial evidence. [Citation.]" (*In re E.W.* (2009) 170 Cal.App.4th 396, 403–404 [88 Cal.Rptr.3d 338].) " 'While the record must reflect that the court considered the issue and decided whether ICWA applies, its finding may be either express or implied.' [Citations.]" (*Id.* at pp. 404–405.)

DCFS concedes that the trial court's ruling regarding the adequacy of the ICWA notices sent in this case was erroneous. Specifically, DCFS admits that it failed to comply with section 224.2, subdivision (a)(5)(C), which states, "All names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known," shall be included in the notice provided pursuant to ICWA. As a result, our inquiry here is to determine the effect of DCFS's failure to provide adequate notice at this stage in the proceedings. We

---

[7] The term "child custody proceeding" is defined for these purposes to include: (1) " 'foster care placement' which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated; [¶] [(2)] 'termination of parental rights' which shall mean any action resulting in the termination of the parent-child relationship; [¶] [(3)] 'preadoptive placement' which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and [¶] [(4)] 'adoptive placement' which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption." (25 U.S.C. § 1903(1); see also Welf. & Inst. Code, § 224.1, subd. (d).)

have determined that reversal of neither the judgment nor the dispositional order is necessary in this case.

■ We recognize that there has been a split of authority and agree with the more recently decided cases on point concluding that "a notice violation under ICWA is not jurisdictional in the fundamental sense, but instead is subject to a harmless error analysis. [Citations.]" (*In re G.L., supra,* 177 Cal.App.4th at pp. 695–696; see *In re Brooke C.* (2005) 127 Cal.App.4th 377, 385 [25 Cal.Rptr.3d 590]; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1410–1411 [129 Cal.Rptr.2d 15]; but see *In re Desiree F.* (2000) 83 Cal.App.4th 460, 474–475 [99 Cal.Rptr.2d 688]; *In re Jonathan D.* (2001) 92 Cal.App.4th 105, 110 [111 Cal.Rptr.2d 628]; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267 [121 Cal.Rptr.2d 820].) " '[T]o hold otherwise would deprive the [trial] court of all authority over the dependent child, requiring the immediate return of the child to the parents whose fitness was in doubt.' [Citation.] An appellant seeking reversal for lack of proper ICWA notice must show a reasonable probability that he or she would have obtained a more favorable result in the absence of the error. [Citations.]" (*In re G.L., supra,* 177 Cal.App.4th at p. 696.)

■ Mother neither argued nor pointed to any facts that support the conclusion that she would have obtained a more favorable result in the absence of the error. Therefore, rather than reversal, the proper remedy here is a limited remand to allow DCFS to comply with ICWA, with directions to the trial court that depend on the outcome of such notice. (*In re Brooke C., supra,* 127 Cal.App.4th at p. 385; see *In re Veronica G.* (2007) 157 Cal.App.4th 179 [188 Cal.Rptr.3d 465]; *Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 267 [77 Cal.Rptr.3d 628] [limited remand still appropriate after amendments to § 224.2].)

As we have stated before, "[w]e are growing weary of appeals in which the only error is [DCFS's] failure to comply with the ICWA. [Citation.] Remand for the limited purpose of ICWA compliance is all too common. [Citation.] The ICWA's requirements are not new. Yet the prevalence of inadequate notice remains disturbingly high." (*Justin L. v. Superior Court* (2008) 165 Cal.App.4th 1406, 1410 [81 Cal.Rptr.3d 884].)

### DISPOSITION

The judgment and dispositional order are affirmed and the matter is remanded for the limited purpose of directing the trial court to order DCFS to comply with the notice provisions of ICWA, the relevant case law interpreting ICWA and the views expressed in this opinion, and to file all required documentation with the trial court for its inspection. If, after proper notice, a

tribe claims that Christian and Antonio are Indian children, the trial court shall proceed in conformity with all provisions of ICWA. And, the children, their mother, and their tribe may petition the trial court to invalidate any orders that violated ICWA. (*In re Veronica G., supra*, 157 Cal.App.4th at p. 188; 25 U.S.C. § 1914.) If, on the other hand, no tribe makes such claim, prior defective notice becomes harmless error.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied August 21, 2012, and the opinion was modified to read as printed above.