Filed 8/25/14  In re D.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E060663 |
| Plaintiff and Respondent, | (Super.Ct.No. J246105) |
| v. | OPINION |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lily L. Sinfield, Judge.  Dismissed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

1

J.G., the alleged father of D.M., appeals from an order terminating his parental rights.  The only issue he raises is whether the juvenile court correctly found that the San Bernardino County Children and Family Services (CFS) complied with the notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).  We conclude that J.G., as an alleged father, does not have standing to assert ICWA error.  Accordingly, we dismiss the appeal.

<u>PROCEDURAL AND FACTUAL HISTORY</u>

Because of the limited issue raised in this appeal, we will give an abbreviated history.  D.M. was detained in September 2012, at the age of four months, because his mother's drug use rendered her unable to provide properly for his needs.  J.G. was arrested on October 1, 2012, and was in local custody in San Bernardino.  He was later incarcerated in Arizona.

A petition pursuant to Welfare and Institutions Code section 300 was filed and jurisdiction established.[1]  Reunification services were offered to mother but not to J.G., who was found to be an alleged father.  Mother did not participate sufficiently in reunification services, which were ultimately terminated.  J.G. remained in custody throughout the proceedings.  Parental rights were terminated, and D.M. was freed for adoption by his de facto parents, the couple who had been his foster parents from the beginning of the dependency.

---

[1] All further statutory citations refer to the Welfare and Institutions Code, unless another code is specified.

2

LEGAL ANALYSIS

J.G. DOES NOT HAVE STANDING TO ASSERT NONCOMPLIANCE

WITH ICWA NOTICE REQUIREMENTS

ICWA was enacted "'to respond to a crisis in which large numbers of Indian children were being removed from their families for placement in non-Indian homes. [Citation.] ICWA was designed to protect the best interests of Indian children and promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families by state courts and the placement of such children in foster or adoptive homes. [Citation.] [¶] At the heart of ICWA are its jurisdictional provisions over child custody proceedings involving Indian children domiciled both on and off the reservation. [Citation.]'" (*In re Christian P.* (2012) 208 Cal.App.4th 437, 450-451, fn. omitted.)

"'Among ICWA's procedural safeguards is the duty to inquire into a dependent child's Indian heritage and to provide notice of the proceeding to any tribe or potential tribes, the parent, any Indian custodian of the child and, under some circumstances, to the Bureau of Indian Affairs.' [Citation.] To comply with these notice requirements, [the social services agency is] required to (1) identify any possible tribal affiliations and send notice to those tribes; and (2) submit copies of such notices, including return receipts, and any correspondence received from the tribes to the trial court.'" (*In re Christian P.*, *supra*, 208 Cal.App.4th at p. 451.) "'The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.] We review the trial court's findings for substantial evidence.'" (*Ibid.*)

3

At the outset of the dependency, D.M.'s mother stated that she had possible Native American heritage through her grandfather, who she believed was a member of the Blackfoot band of the Cherokee tribe. J.G. stated in a letter that he understood that D.M. had ancestry in the Blackfoot tribe of South Dakota, although that was apparently through mother's family, as J.G.'s mother stated at the detention hearing that J.G. himself did not have any Indian ancestry. CFS provided the information given by mother and her family to the Bureau of Indian Affairs, the Eastern Band of Cherokee Indians, the Cherokee Nation of Oklahoma, the Blackfeet Tribe of Montana,[2] and the United Keetoowah Band of Cherokee. The Cherokee Nation of Oklahoma requested further information, which CFS apparently did not provide. The other tribes responded that D.M. was not an Indian child with respect to them. However, CFS reported to the court, in a nonappearance review, that all four tribes had reported that D.M. did not qualify for membership.

J.G. asserts that CFS failed to comply with ICWA notice requirements because it did not provide the requested information or sufficient information concerning mother's grandfather to the pertinent tribes. CFS contends, however, that because J.G. was only an alleged father and had not proven his biological paternity, he lacks standing to assert error under ICWA. We agree with CFS.

---

[2] There is no federally recognized Blackfoot tribe. The Blackfeet Tribe of the Blackfeet Indian Reservation of Montana is a federally recognized tribe. (79 Fed.Reg. pp. 4748-4753 (Jan. 29, 2014); see <http://www.bia.gov/cs/groups/public/documents/text/idc006989.pdf> [as of Aug. 25, 2014].)

The termination of parental rights may be challenged on the ground of lack of ICWA notice by the dependent child, a parent or Indian custodian from whose custody the child was removed, and the Indian child's tribe.  (25 U.S.C. § 1914; rule 5.486(a).) While a non-Indian parent may be aggrieved, for purposes of standing to assert ICWA error on appeal (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339 [Fourth Dist., Div. Two]), an alleged father will generally not have standing because, to be considered a "parent" under ICWA, an unwed father's paternity must be "acknowledged or established."  (25 U.S.C. § 1903(9); *In re Daniel M.* (2003) 110 Cal.App.4th 703, 708.)[3]

Because ICWA does not provide a standard for the acknowledgment or establishment of paternity, courts have resolved the issue under state law.  (*In re Daniel M.*, *supra*, 110 Cal.App.4th at p. 708.)  In California, an alleged father can establish paternity by (1) voluntarily signing a declaration of paternity at the time of the

_____

[3] J.G. asserts that "any parent" whose parental rights are terminated has standing to challenge ICWA compliance.  The cases he cites do not hold that an alleged father has standing.  *In re B.R.* (2009) 176 Cal.App.4th 773 involves a non-Indian mother (*id.* at p. 779), as does *In re Jonathon S.*, *supra*, 129 Cal.App.4th at pp. 338-339.  *In re A.B.* (2008) 164 Cal.App.4th 832 involves a non-Indian father, but no issue was raised as to whether he qualified as a parent for purposes of ICWA.  Cases are not authority for issues they do not address.  (*In re Gino C.* (2014) 224 Cal.App.4th 959, 967.)

child's birth and filing it with the birth certificate (Fam. Code, §§ 7571-7574),[4]

(2) through a judgment of paternity or (3) through blood testing (Fam. Code, § 7551).

Here, (as we discuss in more detail below), J.G. submitted a JV-505 form, "Statement

---

[4] Family Code section 7571, subdivision (a) provides: "On and after January 1, 1995, upon the event of a live birth, prior to an unmarried mother leaving any hospital, the person responsible for registering live births under Section 102405 of the Health and Safety Code shall provide to the natural mother and shall attempt to provide, at the place of birth, to the man identified by the natural mother as the natural father, a voluntary declaration of paternity together with the written materials described in Section 7572. Staff in the hospital shall witness the signatures of parents signing a voluntary declaration of paternity and shall forward the signed declaration to the Department of Child Support Services within 20 days of the date the declaration was signed. A copy of the declaration shall be made available to each of the attesting parents."

Family Code section 7573 provides: "Except as provided in Sections 7575, 7576, 7577, and 7612, a completed voluntary declaration of paternity, as described in Section 7574, that has been filed with the Department of Child Support Services shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction. The voluntary declaration of paternity shall be recognized as a basis for the establishment of an order for child custody, visitation, or child support."

Family Code section 7574 provides: "(a) The voluntary declaration of paternity shall be executed on a form developed by the Department of Child Support Services in consultation with the State Department of Health Services, the California Family Support Council, and child support advocacy groups. [¶] (b) The form described in subdivision (a) shall contain, at a minimum, the following: [¶] (1) The name and the signature of the mother. [¶] (2) The name and the signature of the father. [¶] (3) The name of the child. [¶] (4) The date of birth of the child. [¶] (5) A statement by the mother that she has read and understands the written materials described in Section 7572, that the man who has signed the voluntary declaration of paternity is the only possible father, and that she consents to the establishment of paternity by signing the voluntary declaration of paternity. [¶] (6) A statement by the father that he has read and understands the written materials described in Section 7572, that he understands that by signing the voluntary declaration of paternity he is waiving his rights as described in the written materials, that he is the biological father of the child, and that he consents to the establishment of paternity by signing the voluntary declaration of paternity. [¶] (7) The name and the signature of the person who witnesses the signing of the declaration by the mother and the father."

6

Regarding Parentage," in which he asserted his paternity. He stated that he had signed a voluntary declaration of paternity. However, he appears to have been referring to his handwritten statement included in that form, stating that he is D.M.'s father and was present at his birth. No voluntary declaration of paternity which satisfies Family Code section 7574 was submitted to the court. Nor did J.G. establish his paternity by blood testing or by a judgment of paternity.

California courts have also held that if an alleged father appears in the proceedings, asserts a position, and takes steps to establish his paternity, he has standing to appeal. In *In re Baby Boy V.* (2006) 140 Cal.App.4th 1108, the father appeared and made repeated requests for a paternity test, which were denied. (*Id*. at pp. 1112-1113.) The Court of Appeal found that the alleged father had standing because he "appeared and asserted a position—that he believed he was the father, wanted to confirm his belief with a paternity test, and wanted to know and support his son." (*Id*. at p. 1117.) The alleged father in *In re Paul H*. (2003) 111 Cal.App.4th 753 also made numerous attempts to obtain paternity testing. The Court of Appeal held that he had standing to appeal because he "took immediate steps to become a party once he was notified of the dependency proceedings. He contacted the social worker, appeared at the next court hearing, communicated to the court that he might be the minor's father and attempted to complete paternity testing." (*Id*. at p. 759 & see pp. 756-758.) Assuming that the same standard applies to a determination whether an alleged father has acquired standing to assert ICWA error on appeal from an order terminating parental rights, we cannot conclude that J.G. did take sufficient steps to acquire standing.

7

Here, J.G. was identified as the child's alleged father at the detention hearing on September 26, 2012. He was not present, and he had not as yet been appointed counsel. On October 29, 2012, J.G. mailed to the court a JV-505 form, "Statement Regarding Parentage," in which he stated that he believed he was the child's father and requested that the court enter a judgment of parentage. He was in custody in Arizona at the time. It does not appear that either the court or the attorney who was appointed to represent J.G. was aware of the form. It is not clear from the record when counsel was appointed, but as of November 8, 2012, at least, the attorney who had by then been appointed had not received any communication from him. There is no reference to the JV-505 form J.G. had submitted, either on that date or at the jurisdiction/disposition hearing held on December 3, 2012.

J.G.'s attorney did not inform the court that J.G. was asserting his paternity and wished to have it established until the review hearing on July 29, 2013. At that hearing, the issue was termination of reunification services and setting the hearing on termination of parental rights, pursuant to section 366.26. Counsel requested a continuance to a date after J.G.'s projected release date in April 2014. The court denied the request and advised counsel that J.G.'s remedy was to file a section 388 petition for modification. The court terminated services and set the section 366.26 hearing.

If paternity has not been established before the termination of reunification services, the putative father's remedy is to file a section 388 petition. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 454-455; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 956.) J.G.

8

did not file a section 388 petition.[5]  Because that remedy was available to him but he failed to take advantage of it, we cannot say that he took sufficient action to acquire standing, in spite of his earlier effort to assert his paternity by filing his form JV-505. Certainly, that is not equivalent to the persistent efforts of the fathers in *In re Baby Boy V.*, *supra*, 140 Cal.App.4th 1108 and *In re Paul H.*, *supra*, 111 Cal.App.4th 753 to assert their paternity.

DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
Acting P. J.

We concur:

RICHLI_____
J.

MILLER_____
J.

---

**5**  He also did not file a writ petition challenging the denial of his request for a continuance to establish paternity and the setting of the section 366.26 hearing.