Filed 9/11/15  In re D.N. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.N., A Person Coming Under the Juvenile Court Law. | B259170 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK04029) |
| Plaintiff and Respondent, | |
| v. | |
| G.N., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed and remanded with directions.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Father G.N. appeals from the juvenile court's jurisdictional and dispositional orders concerning his daughter, D.N. Father does not challenge the substantive findings made by the trial court, but contends the court's orders must be reversed because the Department of Children and Family Services (Department) failed to comply with the notice requirement of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We agree the Department failed to comply with ICWA and remand the matter with directions to the juvenile court to ensure the Department's compliance with ICWA's notice requirement. We affirm the orders of the juvenile court in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Eliza V. (mother) and father are unmarried and had two children together, D.N. and Giselle N. At the time the Department filed its petition in this case, D. was two and one-half years old and Giselle was seven months old. Giselle died during the pendency of this appeal.

The Department first learned of the family in late November 2013, when mother sought an emergency protective order against father. Mother reported to the Sheriff's Department that father physically abused her in the past and recently threatened to kill her after she took his cell phone. Further, mother disclosed that two weeks earlier when she confronted father about suspected infidelity, father became enraged and assaulted her, then threatened to kill her. Sheriff's deputies arrested father on November 23, 2013 and the court issued a restraining order prohibiting father from contacting or coming within 100 yards of mother. The Department's case workers attempted to contact mother and father repeatedly over the next few weeks without success.

Although mother moved out of the family residence with the children, mother and father continued to see each other in violation of the restraining order. In late February, 2014, mother reported to the California Highway Patrol (CHP) that father threatened to kill her while driving recklessly on the freeway. The CHP reported the incident to the Department.

On March 6, 2014, a case worker spoke to mother and father separately. Both parties confirmed they were still in a relationship. Mother described numerous prior arguments during which father became physically abusive, but denied they constituted domestic violence. However, Mother admitted the girls had been present during violent arguments on at least two occasions. The Department immediately detained the children and placed them into foster care. Sheriff's deputies arrested father the next day.

On March 11, 2014, the Department filed a petition alleging jurisdiction under section 300, subdivisions (a) and (b). The petition asserted the ongoing domestic violence placed the girls at risk of physical harm, and mother failed to protect the children from prior violent incidents by allowing father to continue to reside with them. At the detention hearing on March 11, 2014, the court vested temporary custody with the Department and ordered suitable placement. The court ordered supervised visitation for each of the parents. Mother completed her ICWA-020 form, titled "Parental Notification of Indian Status," indicating she had no Indian ancestry. Father was not present at the hearing. The court ordered the Department to investigate whether father claimed Indian heritage and, if so, to provide proper notice under ICWA.

On March 21, 2014, Father submitted his ICWA-020 form and checked the box to indicate he "may have Indian ancestry." In the space provided, he wrote "Cherokee. Please contact Walter N[.]," and provided a phone number. The court ordered the Department to provide notice to Cherokee tribes, the Bureau of Indian Affairs (Bureau), and the Secretary of the Interior (Secretary) regarding father's Indian heritage claim. The Department's subsequent jurisdiction/disposition report contains no indication the Department attempted to contact Walter N. or provided notice as ordered.

On March 25, 2014, the Department released the girls to father's aunt, J.M. On May 29, 2014, the court held a jurisdictional hearing. The court sustained the Department's petition, finding both jurisdictional allegations true. However, the court continued the dispositional hearing because the Department had not yet given notice as

3

required under ICWA and as previously ordered. The court set the matter for further hearing on June 16, 2014.

According to the Department's last minute information, filed on June 16, 2014, a case worker spoke with father on June 10, 2014 regarding his Indian heritage claim. Father could not identify a specific tribal affiliation and had no knowledge whether he was registered with a tribe. He referred the case worker to his grandmother, Annie N., and provided her phone number. Later that day, the case worker spoke with Annie N., who stated the family might have Indian heritage through her father, Carey S. Sr. Annie N. told the case worker she had little information about her father, but knew he was born in Louisiana and died in 1984. She could not confirm whether Walter N. had any Indian heritage, but told the case worker that Walter N. had dementia and would be unable to provide any information. It does not appear the Department attempted to contact Walter N. after the case worker spoke to Annie N. Although the juvenile court previously ordered the Department to provide notice to Cherokee tribes, the Bureau and the Secretary, the last minute information concludes, "the Department was unable to obtain sufficient information to trigger ICWA notice."

At the hearing on June 16, 2014, the court reiterated its prior order that the Department provide notice under ICWA and continued the dispositional hearing to August 5, 2014 to allow the Department to do so. The court also ordered the Department to provide a supplemental report regarding ICWA notice. On July 16, 2014, the Department mailed a "Notice of Child Custody Proceeding for Indian Child," form ICWA-030, to D.'s parents, the Bureau and the Secretary. The notice stated that a dispositional hearing concerning D. would be held on August 5, 2014. The Department included few details regarding father's relatives and did not include the information the Department learned about Carey S., Sr. On August 5, 2014, the court again continued the dispositional hearing due to ICWA notice issues.

In a last minute information dated September 3, 2014, the Department advised the court it mailed ICWA-030 notices to the parents, the Bureau and the Secretary on July 16, 2014, and had not received any response from the agencies. At the

4

dispositional hearing on September 3, 2014, the court found the Department provided notice to the Bureau and that based upon the available information the court "has no reason to know that the Indian Child Welfare Act applies or that these are Indian children . . . . " As to the disposition, the court terminated the suitable placement order and placed the children in mother's home, on the condition that mother and the children reside either with mother's parents or in Department approved housing.

Father filed a notice of appeal on September 17, 2014.

## CONTENTIONS

Father contends the juvenile court erroneously concluded proper ICWA notice was provided in this case because (1) the Department failed to provide written notice to Cherokee Indian tribes, and (2) the Department's written notice to the Bureau did not include the statutorily required information about father's relatives.

## DISCUSSION

1.    *Relevant Law*

"Congress enacted ICWA in 1978 to protect Indian children and their tribes from the erosion of tribal ties and cultural heritage and to preserve future Indian generations. [Citations.] Because ' "the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents" ' [citation], a tribe has the right to intervene in a state court dependency proceeding at any time [citation]." (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848.)

Under Welfare and Institutions Code, section 224.3,[1] the juvenile courts and the social services departments have an affirmative and continuing duty to inquire whether a dependent child is or may be an Indian child. (§ 224.3, subd. (a); *In re Christian P.* (2012) 208 Cal.App.4th 437, 451.) Accordingly, if the juvenile court or the social worker "knows or has reason to know that an Indian child is involved," the social worker must "make further inquiry regarding the possible Indian status of the child . . . by interviewing the parents . . . and extended family members . . . and

---

[1]    All further section references are to the Welfare and Institutions Code, unless otherwise specified.

5

contacting . . . any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (§ 224.3, subd. (c); see also Cal. Rules of Court, rule 5.481(a)(4).[2]) Section 224.3, subdivision (b), provides in pertinent part: "The circumstances that may provide reason to know the child is an Indian child include, but are not limited to, the following: [¶] (1) A person having an interest in the child, including . . . a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe . . . . " (§ 224.3, subd. (b)(1); rule 5.481(a)(5)(A).)

When a juvenile court "knows or has reason to know that an Indian child is involved" in a dependency case, it must ensure the child's tribe receives notice of the proceedings and its right to intervene. (25 U.S.C. § 1912(a); §§ 224.2, subd. (a), 224.3, subd. (d); rule 5.481(b); see also *In re Christian P., supra*, 208 Cal.App.4th at p. 451.) If the identity or location of the child's tribe cannot be determined, the notice need only be given to the Bureau. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1157, quoting 25 U.S.C. § 1912, subd. (a); § 224.2, subd. (a)(4).)

We review de novo whether the information provided by father triggered ICWA's notice requirement. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254 (*Dwayne P.*).) " 'The trial court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.] We review the trial court's findings for substantial evidence. [Citation.]' " (*In re Christian P., supra*, 208 Cal.App.4th at p. 451.) Failure to give notice under ICWA is subject to harmless error analysis. (*Id.* at p. 452.) A parent does not waive an ICWA notice issue by failing to raise it below. (*In re Nikki R., supra*, 106 Cal.App.4th at p. 849.)

---

[2]     All further rule references are to the Rules of Court.

2. *Father Provided Sufficient Information to Trigger ICWA's Notice Requirement*

The Department argues on appeal that it had no duty to provide notice under ICWA in this case. We disagree.

"The determination of a child's Indian status is up to the tribe; therefore, the juvenile court needs only a suggestion of Indian ancestry to trigger the notice requirement. [Citations.]" (*In re Nikki R., supra*, 106 Cal.App.4th at p. 848.) Here, father submitted his ICWA-020 form and checked the box indicating he "may have Indian ancestry." In the space provided, he wrote "Cherokee." This declaration, without more, triggered ICWA's notice requirement. (See, e.g., *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1198 [mother's indication on Parental Notification of Indian Status form the child may be eligible for membership in the "Navajo–Apache" tribes, standing alone, "gave the court reason to know that [the child] *may be* an Indian child."]; *In re J.T.* (2007) 154 Cal.App.4th 986, 993-994 [notice requirement triggered by references to Cherokee and Sioux heritage]; *In re Damian C.* (2009) 178 Cal.App.4th 192, 199 [mother's reference on her ICWA-020 form to Pasqua Yaqui heritage sufficient to trigger notice requirement]; *Dwayne P, supra*, 103 Cal.App.4th at p. 257 [parents' statements that the child has "Cherokee Indian heritage" sufficient to trigger notice requirement].)

Without citing any pertinent case law, the Department simply asserts it had no duty to provide notice under ICWA in this case. Although we could reject this conclusory argument due to the Department's failure to provide factual support or case authority, we address the Department's contention in order to reiterate the Department's inquiry and notice obligations under ICWA. As we have previously observed, although " 'ICWA's requirements are not new . . . the prevalence of inadequate notice remains disturbingly high.' [Citation.]" (*In re Christian P., supra*, 208 Cal.App.4th at p. 452.) Further, it is beyond dispute that the Indian status of a child need not be certain to trigger ICWA's notice requirements, and that "the bar is indeed very low to trigger ICWA notice." (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408.)

7

Here, it appears the Department believes the information father and his family provided was too vague to trigger ICWA's notice requirement. Specifically, although the court ordered the Department to give notice to the Bureau and to Cherokee Indian tribes, the Department concluded after its initial ICWA inquiry that it "was unable to obtain sufficient information to trigger ICWA notice."

In a handful of cases, appellate courts have held that ICWA's notice requirement is not triggered by "vague references" to Indian heritage. (See, e.g., *In re J.D.* (2010) 189 Cal.App.4th 118, 125 [notice not required where paternal grandmother indicated possible Indian ancestry, tribe unknown]; *In re O.K.* (2003) 106 Cal.App.4th 152, 156-157 [grandmother's statement children may have Indian heritage, no known tribe, "too vague and speculative to give the juvenile court any reason to believe the minors might be Indian children"].) However, in those cases the family members made generic assertions that the dependent child might have some Indian heritage, without reference to either a particular tribe or a particular family member with Indian ancestry. (See *In re J.D., supra*, at p. 123 [mother said her grandmother told her she had Native American ancestry, but mother did not know which family member had the connection, did not know which tribe(s) might be involved, and had no living relatives who could provide any further information]; *In re O.K., supra*, at p. 157 [paternal grandmother said father "might have Indian blood in him," but could not identify any specific tribe or relative with Indian ancestry and had no reason to believe any Indian ancestry existed, other than the location the family once lived].) At first blush, Annie N.'s statement that her father may have Indian heritage, combined with her inability to provide significant identifying information, might seem to be the sort of "vague reference" contemplated by these cases. However, the information from Annie N. was not the only information the Department received in this case, and therefore we do not decide whether the information provided by Annie N. would, standing alone, trigger ICWA's notice requirement. Here, the Department also received father's ICWA-020 form which stated he "may have Indian ancestry" and specified "Cherokee." As the juvenile court recognized, that statement triggered the Department's notice obligations under ICWA.

8

3. *Notice to Cherokee Indian Tribes Is Required*

It is undisputed that the Department did not provide written notice of the dependency proceedings to any Cherokee tribe. Father contends the Department's failure in this regard requires us to reverse the court's jurisdictional and dispositional orders. We agree the Department must provide notice of these dependency proceedings to all federally registered Cherokee tribes. However, rather than reverse the court's orders, which appear to be supported by substantial evidence and which father does not challenge on substantive grounds, we remand in order to allow the court to ensure the Department complies with ICWA's notice requirements.

Father asserts that his ICWA-020 form, in which stated he "may have Indian ancestry" and listed "Cherokee" in the space provided, triggered the Department's duty to give written notice of the proceedings to all federally recognized Cherokee tribes. Father is correct. Under California law, where ICWA notice is required, notice must be provided to the Sacramento area director of the Bureau of Indian Affairs and "all tribes of which the child may be a member or eligible for membership," until the trial court designates the child's Indian tribe under section 224.1, subdivision (e). (§ 224.2, subd. (a)(3), (4).) ICWA defines "Indian tribe" as "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians, including any Alaska Native village . . . . " (25 U.S.C. § 1903(8); § 224.1, subd. (a) [using federal statutory definition of "Indian tribe"]; *In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1280, fn. 3.) Identifying the relevant tribes is not a difficult task, inasmuch as federal regulations require the Secretary of the Interior to publish annually a list of all federally recognized Indian tribes. (25 C.F.R. § 83.6, subd. (a) (2015); see, e.g., 80 Fed.Reg. 1942-02 (et seq.) (Jan. 14, 2015), also available online at <http://www.bia.gov/cs/groups/public/documents/text/idc1-029079.pdf>.) On remand, the juvenile court must ensure the Department sends written notice of the dependency proceedings to all Cherokee Indian tribes recognized by the Bureau.

9

As the Department contends ICWA's notice requirement was not triggered in this case, it does not directly address father's assertion that it must provide written notice to Cherokee tribes. However, the Department seems to suggest father withdrew his claim of Cherokee heritage, thus negating any duty to provide notice to the Cherokee tribes. We are aware of only one case, *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, in which a parent asserted, and then retracted, a claim of Indian heritage. There, father initially stated "he might have some Indian heritage and the matter needed to be researched." (*Id.* at p. 1521.) Three weeks later, father "told the Department and the court that he did not have any Indian heritage." (*Ibid.*) Father's counsel later "clarified that although father had initially claimed he might have Indian ancestry, he had retracted that claim and did not have any Indian heritage." (*Ibid.*) The Court of Appeal held that "[b]ecause father retracted his claim of Indian heritage, and because there was no other basis for suspecting that Jeremiah might be an Indian child, the trial court properly proceeded without ICWA notice." (*Ibid.*)

Contrary to the Department's suggestion, we see no evidence in the record that father retracted his claim of Cherokee Indian heritage in this case, as occurred in *In re Jeremiah G.* Here, after father submitted his ICWA-020 form designating his possible Indian heritage as "Cherokee," the Department interviewed father. The Department's last minute information states father "had no knowledge of which tribe his family is affiliated [sic]" and "also had no knowledge of being registered." We construe these statements as an inability to provide further information beyond the Cherokee tribal affiliation stated on the ICWA-020 form, rather than a retraction or modification of that information.

Further, and to the extent the Department suggests father should have produced additional information in support of his Indian heritage claim, we note our Legislature places an affirmative duty of inquiry on the courts and upon social services departments. (§ 224.3; *Dwayne P., supra*, 103 Cal.App.4th at p. 258.) "ICWA . . . is designed to protect Indian children and tribes notwithstanding the parents' inaction. [Citations.]" (*Ibid.*)

In sum, father's claim of possible Cherokee Indian ancestry on his ICWA-020 form triggered the Department's duty to give written notice of the dependency proceedings to all federally registered Cherokee Indian tribes.

4.    *The Department's Written Notice to the Bureau of Indian Affairs Was Inadequate*

On July 16, 2014, the Department notified the Bureau of the dispositional hearing scheduled to take place on August 5, 2014.  Father contends the notice was inadequate because it contained very little information about his relatives, and did not include the information the Department learned from his grandmother, Annie N., regarding her father, Carey S., Sr.  We agree and, as we must remand for compliance with ICWA in any event, we discuss the deficiencies in the notice for the benefit of the Department and the juvenile court.  As has been repeatedly stated, "[t]he ICWA notice requirement is not onerous. '[C]ompliance requires no more than the completion of a preprinted form promulgated by the State of California, Health and Welfare Agency, for the benefit of county welfare agencies.' [Citation.]" (*Dwayne P., supra*, 103 Cal.App.4th at p. 254.)

Because the right to intervene is meaningless unless the tribe receives notification, ICWA's notice requirements are strictly construed.  (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 474-475.)  Further, "[i]f the notice duty is triggered under ICWA, the notice to a tribe must include a wide range of information about relatives, including grandparents and great-grandparents, to enable the tribe to properly identify the children's Indian ancestry," if any. (*In re J.D., supra*, 189 Cal.App.4th at p. 124; § 224.2, subd. (a)(5).)  "The social worker in a child dependency case is statutorily required to interview the child's parents and extended family members to gather the information required for the ICWA notice.  (§224.3, subd. (c).) [fn. omitted]" (*In re I.B.* (2015) 239 Cal.App.4th 367.)  Specifically, the notice must include the names (including maiden, married, and former names or aliases), current and former addresses, birthdates, places of birth and death, and tribal enrollment numbers, and/or other

11

identifying information for the Indian child's biological parents, grandparents, and great-grandparents. (§ 224.2, subd. (a)(5)(C).)

The Department failed to fulfill its statutory notice obligations in this case. First, as father points out, the notice to the Bureau includes very little of the statutorily required information concerning his family members. (See § 224.2, subd. (a)(5).) Specifically, although the Department listed the names of father's parents (the paternal grandparents), the notice includes none of the other required identifying information about them, such as addresses and dates and places of birth. Given that father has a close relationship with his own father, who is still living, it appears this information was easily discoverable by the Department. The Department also listed the names of only two (of four) of the paternal great-grandparents, and provided no other details about them, as required under section 224.2, subdivision (a)(5)(C). Further, the Department did not advise the Bureau that father claimed Cherokee Indian ancestry, and instead stated only "Native American Ancestry Claimed - Tribe Unknown" as to father and all his listed relatives.

In addition, the Department's notice failed to disclose all the information it obtained during its cursory investigation. Specifically, the Department learned from Annie N. that father's Indian heritage may derive from her father (the paternal great-great-grandfather), Carey S., Sr. However, the Department's notice does not include the only identifying information Annie N. was able to provide: Mr. S.'s name, state of birth and year of death. Although neither section 224.2 nor the ICWA-030 form requires the Department to collect information about a dependent's great-great-grandparents, the Department's failure to disclose to the Bureau the only useful information it did collect is inconsistent with the purpose of ICWA and the California statutes designed to implement it. (See *In re Francisco W.* (2006) 139 Cal.App.4th 695, 703 ["It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the one with the alleged Indian heritage"].)

12

For these reasons, and others evident on the face of the notice, we conclude the Department's notice to the Bureau did not satisfy ICWA's notice requirement.

5. *Harmless Error Analysis*

" 'A notice violation under ICWA is not jurisdictional in the fundamental sense, but instead is subject to a harmless error analysis. [Citation.]' " (*In re Christian P., supra*, 208 Cal.App.4th at p. 452.) Father does not argue, nor does the record contain any facts to suggest, he would have obtained a more favorable outcome at this early stage in the proceedings, had the Department provided proper notice to the Cherokee tribes and the Bureau. Accordingly, we need not disturb the trial court's jurisdictional findings or its dispositional order. Instead, "the proper remedy here is a limited remand to allow [the Department] to comply with ICWA, with directions to the trial court that depend on the outcome of such notice." (*Id.* at p. 452.)

We reject father's assertion that we must reverse the juvenile court's jurisdictional and dispositional orders due to the Department's noncompliance with ICWA. Father's reliance upon *In re S.E.* (2013) 217 Cal.App.4th 610, is misplaced, as that case involved the establishment of guardianship as the minor's permanent plan, a course of action that necessarily deprived any concerned Indian tribe of its rights under ICWA. (*Id.* at p. 617.) By contrast, the record in this case contains no indication that permanency planning will be necessary. Accordingly, remand for ICWA compliance is the most appropriate remedy.

13

### *DISPOSITION*

We affirm the jurisdictional and dispositional orders of the juvenile court.   The matter is remanded to the court with directions to order the Department to comply with the inquiry and notice provisions of ICWA and sections 224.2 and 224.3.  If, after proper notice, a tribe determines D. is an Indian child, the tribe, a parent or D. may petition the juvenile court to invalidate any orders that violate ICWA.


### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.

WE CONCUR:



EDMON, P. J.



ALDRICH, J.

14