Filed 7/7/16  R.B. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| R.B., <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF MENDOCINO COUNTY, <br><br>     Respondent; <br><br> MENDOCINO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., <br><br>     Real Parties in Interest. | A148146 <br><br> (Mendocino County <br> Super. Ct. No. SCUKJVSQ 14-17099) |

**MEMORANDUM OPINION**[1]

R.B., father of J.B., petitions this court for extraordinary relief from the juvenile court's orders of April 7, 2016 bypassing reunification services and setting a permanency planning hearing currently set for August 4, 2016.  (Welf. & Inst. Code, §§ 361.5, subd. (b)(3), 366.26).[2]  R.B. contends the court's jurisdictional and dispositional findings are not supported by substantial evidence.  We issued an order to show cause on May 24, 2016.  After careful consideration of the record and the parties' contentions, we deny

---

[1] We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1(2), (3).

[2] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

petitioner's request for extraordinary relief on the merits and affirm the juvenile court's orders.

**STATEMENT OF HISTORICAL AND PROCEDURAL FACTS**

*Petition and Detention Hearing*

Minor J.B. was born in November 2014. He tested positive at birth for methamphetamine. Mother admitted using methamphetamine before the birth. She also tested positive for methamphetamine. The Mendocino County Health and Human Services Agency (Agency), was notified and the baby was detained at the hospital. R.B. was present following the birth and expressed surprise to hospital staff that he could still have children.

On November 14, 2014, R.B. called social worker Cahill and reported to her that he had been in a relationship with mother since April 2014. He said he was currently homeless, had recently been arrested for methamphetamine-related issues and was currently receiving Alcohol and Other Drug Programs (AODP) services in Laytonville.

On November 17, 2014, both parents were invited to drug test for the Agency. Mother tested positive for methamphetamine. R.B. "refused to submit to a drug test and ultimately admitted that he would test positive for methamphetamine." He admitted to social worker Nava "that he had a daily methamphetamine habit." Both parents admitted they did not have a relapse prevention plan. R.B. also reported at that meeting he had a gambling problem. He had a history of seven referrals and two Child Welfare Services cases. The social worker orally confirmed R.B.'s address and phone number.

A petition pursuant to section 300, subdivision (b) was filed on November 17, 2014, alleging in paragraph (b-3) that R.B. "has a substance abuse issue that inhibits his ability to parent his child, baby boy [S.]." It further alleged that R.B. admitted his recent arrest, current enrollment in AODP, refusal to submit to a drug screen, and statement to a social worker that he would test positive for methamphetamine if tested, and that "he has

2

a daily methamphetamine habit of approximately $100 per day." Paragraph (b-4) alleged he was currently homeless. R.B. was given oral notice of the detention hearing.

J.B. was formally detained November 18, 2014, after an uncontested detention hearing at which only mother appeared.

### *Jurisdiction*

At the uncontested jurisdiction hearing held on December 31, 2014, the court found true the allegations under paragraphs (b-1), (b-3), and (b-4), and dismissed the allegation under paragraph (b-2).

### *Disposition*

The minor was in foster care. Shortly before the disposition hearing, mother reported to the social worker that "she still sees [R.B.], and he does not express very much interest in participating in services." The social worker reported she had made efforts to contact R.B. by mail, but he had not responded.

An uncontested disposition hearing was held on January 15, 2015, at which time mother was offered reunification services. R.B. was deemed statutorily ineligible for reunification services. (§ 361.5, subd. (a).)

### *Six-Month Review Hearing*

A contested six-month review hearing was held on July 2, 2015. R.B. was notified by mail at the same ineffective address as before. He did not appear at the hearing. The court terminated reunification services to mother, due largely to her continued use of methamphetamine, and set a permanent plan hearing for October 29, 2015. Mother timely petitioned for extraordinary relief. Her petition was denied September 23, 2015.[3]

---

[3] *S.S. v. Superior Court* (Sept. 23, 2015, A145809 [nonpub. opn.]). The remittitur issued October 26, 2015.

*Subsequent Developments*

Following a due diligence search by the Agency, R.B. was personally served with notice of the permanency planning hearing on August 11, 2015. He appeared at the hearing on October 29, 2015 and was appointed counsel. A paternity test was ordered and R.B. updated his address. The section 366.26 hearing was continued.

On December 4, 2015, R.B. filed a request to vacate the section 366.26 hearing and all orders after detention on grounds of lack of notice. Hearing was set for January 6, 2016. On that day, positive paternity results for R.B. were received into evidence. Both parents were present at the hearing. The court set aside all findings and orders as to father.[4]

On February 3, 2016, the Agency filed a subsequent dependency petition (§ 342) alleging in paragraph (b)(1) that father "has a chronic history of addiction, including an extensive history of methamphetamine addiction which renders him unavailable and incapable of providing for the safety and care of his young child, [J.B.]." The petition alleged as supporting facts that on November 17, 2014, father told the social worker he had a "$100–$200 per day meth problem" but his "real issue" was gambling. It also alleged his refusals to take drug tests on November 17, 2014 and January 6, 2016, and his admission that he took nonprescribed Vicodin while in drug treatment, and stated he " 'knows when [he] is going to test and gets around that.' " Additionally, on June 11, 2015, mother admitted to social worker Quadrelli that father "provided and used methamphetamine, alcohol, and marijuana with her on June 10, 2015." On June 17, 2015, she admitted to Quadrelli that she used methamphetamine with father on June 16, 2015.[5]

---

[4] The court also set aside all orders as to mother, but later reversed itself.

[5] In the interest of brevity, allegations in the petition and the social worker's reports which were not sustained by the court are not summarized here.

4

The "342 Subsequent Detention Summary" report indicates that R.B. is 49 years old. Notes taken at the November 17, 2014 drug test were attached to corroborate the allegations made in the petition concerning R.B.'s various admissions. The report added that R.B. also stated at the time he sells "dope."

The report also included a summary of R.B.'s prior criminal history, which reportedly began in 1986, although only the last 10 years were summarized. R.B.'s history included a felony conviction for spousal battery in 2005; one misdemeanor conviction for driving on a suspended license in 2005 (Veh. Code, § 14601.1), two misdemeanor convictions for using controlled substances (Pen. Code, § 11550), one in 2006 and one in 2013, for which a drug treatment program was ordered as a condition of probation; one misdemeanor conviction for fighting in public (Pen. Code, § 415, subd. (1)) in 2011, and one misdemeanor conviction for disorderly conduct (Pen. Code, § 647, subd. (f)) in 2012. Between 2006 and 2013, R.B. also had numerous arrests for being under the influence that were dismissed or not filed; one arrest for possession of a controlled substance in 2007 (Health & Saf. Code, § 11377) which was not filed; arrests in 2009 and 2010 for spousal battery and making criminal threats (Pen. Code, §§ 243, subd. (e)(1), 422), which were not filed, and arrests in 2005 for receiving stolen property and vehicle theft, and possession of marijuana while driving (Pen. Code, § 496, subd. (a), Veh. Code, §§ 10851, subd. (a), 23222, subd. (b)), which were dismissed.

The social worker's jurisdictional report filed February 19, 2016 reiterated information from the detention report but added the following correction. On May 10, 2006, father was arrested for being under the influence of a controlled substance and served a 90-day sentence. He served another 90-day sentence following his arrest on the same charge on July 25, 2007. On June 21, 2012, he was placed on probation for 24 months on his conviction for intoxication-related disorderly conduct. On July 24, 2013, he was again arrested for being under the influence of a controlled substance in violation of his probation; he was convicted of a misdemeanor and sentenced to probation for 18

5

months.  As a condition of his probation, R.B. was court-ordered into a drug treatment program on July 24, 2013, which he completed on December 17, 2014.  The court's signed order and court minutes were attached to verify R.B.'s entry into and exit from the drug program.

In addition, a social worker's delivered service log (DSL) was attached to verify that on November 17, 2014, R.B. refused to drug test, admitted he had taken a nonprescription Vicodin the night before, said "he knows 'when he is going to test and gets around that,' " and admitted he had "a $100.00–$200.00 a day meth problem but [his] real issue is gambling."  He also admitted he sells "dope."

A social worker's DSL was attached to verify that on June 10, 2015, mother admitted she relapsed on methamphetamine, alcohol, and marijuana, which R.B. provided to her and used with her.  On June 17, 2015, mother admitted she and R.B. used methamphetamine and marijuana together the previous night, on June 16.

R.B. again refused to drug test for the Agency on January 6, 2016.

The balance of the report documented R.B.'s lack of expressed interest in his child and lack of contact with the Agency from November 17, 2014 to date (February 2016).  On January 6, 2016, he indicated through counsel he was willing to begin services, but never picked up his referrals to anger management, substance use disorder treatment and intake support group.  Eventually, copies of the referrals were given to his attorney.

R.B. filed objections on hearsay grounds to statements in the social worker's report regarding his criminal history, his social service history regarding his daughter, J.M., and statements made by mother about father.

### *Jurisdictional Hearing*

A jurisdictional hearing was held on March 3, 2016.  The Agency submitted on the social worker's jurisdictional report.  R.B. testified he told the social worker he *used to have* a "[$]100 to $200-a-day habit" until he began attending the drug treatment program.  He denied telling the social worker he knew how to get around drug testing.  He denied

telling the social worker he had taken a Vicodin, and denied using illegal drugs with mother on June 10 or any other day after the child's birth. R.B. admitted he lived with mother off and on, and that she would get mad at him and leave when he refused to supply her with drugs.

The court found the (b)(1) allegation to be true. The court specifically found R.B.'s testimony not credible on this issue and found corroboration of mother's statements about R.B.'s current drug use.[6]

### *Disposition Hearing*

As relevant here, the social worker's report filed March 28, 2016 added little new information, except that R.B. again refused to drug test on March 3, 2016. R.B. "has not met the child since his birth . . . , and has not made efforts to visit the child." For all the

---

[6] The court explained: "First of all, we do have [mother's] comment as to what occurred in June of this year and, . . . even though it may not be sufficient by itself without corroboration, I do find substantial corroboration, enough to tie it in and make it a sustainable allegation. [¶] Specifically, among other things, the part of a jurisdictional report from December of 2014 just referred to . . ., and I note in part Mr. [B.] refuses to submit to a drug test and ultimately admitted that he would test positive for methamphetamine. That's contrary to what he was testifying to today. [¶] This is not simply that he had a habit in the past, but he was stating at the time when he refused to submit that he had a meth habit. Now there may have been a misunderstanding, but we've got a social worker stating in this report that he stated he would test positive and he admitted that he had a daily meth habit. [¶] Additionally, Mr. [B.]'s comments regarding the same issue at the same . . . meeting, but this time in the jurisdictional report filed in February of this year indicates that not only did Mr. [B.] claim he figured out how to get around testing, he likewise refused to provide a urine sample to the agency. That's already been acknowledged. But the fact that he was indicating that he knew how to get around testing, he may or may not have known how to get around testing, but apparently it was something that may have made a difference in terms of what was going on in terms of his ongoing treatment versus his ongoing use. [¶] He also . . . admitted to taking Vicodin. Now his testimony was it was just Motrin, prescription Motrin from his mother, but that's contrary to what the social worker has stated and would undercut Mr. [B.]'s credibility in that regard, and this was a prescription medication that was not prescribed to him. In looking at all these factors together, I do find there's sufficient corroboration and I do find that (B)(1) is sustained."

7

reasons previously stated, the Agency recommended that reunification services be bypassed pursuant to section 361.5, subdivision (b)(13).

A disposition hearing was held on April 7, 2016. Deputy County Counsel Douglas Parker testified that as a former district attorney he is familiar with the California Law Enforcement Telecommunications System (CLETS) and is assigned to assist the Agency by reviewing and interpreting CLETS reports. He reviewed the CLETS report for R.B. "alongside the information as it was interpreted by the social worker, looking at the convictions, the identifications of the person involved, and all arrests that I could find," and opined that "the notes that Ms. Quadrelli made are accurate in that they do show the proper convictions where listed for [R.B.], born in 1967 on February 2nd." Counsel for R.B. restated his objection that "CLETS itself is hearsay because it's not a court document, it's not the sentencing document, it's not the court minutes, it's not the judgment." It was offered as a business record and an official court record. The court overruled the objection.

Social worker Herold testified. She was present at the meeting on November 17, 2014, and asked R.B. to submit to drug testing. R.B. stated he had a $100- to-$200-a-day methamphetamine habit. To her mind, he understood he was being asked about his drug use at the present time, not at some time in the past. He also said he had taken a Vicodin, and he would not test because he feared the Vicodin would show up.

Social worker Quadrelli testified about her limited contacts with R.B., his disinterest in his child, and his refusal to pick up his referrals for services. The court admitted into evidence certified copies of the conviction for which R.B. was ordered into drug treatment. At the conclusion of the hearing the court found that the bypass provisions of section 361.5, subdivision (b)(13) applied. Specifically, the court found "that there has been chronicity in terms of drug usage" and that "there is resistance within the meaning of the statute." The court noted that based on the social worker's DSL, it believed R.B.'s comment about the extent of his drug use at the November 2014 meeting

8

was meant to indicate the present tense. The court also believed the evidence that R.B. had used drugs twice in June showed not just chronicity but resistance to treatment.

## DISCUSSION

R.B. argues the trial court's jurisdictional and dispositional findings are not supported by substantial evidence. " 'On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order.' " (*In re Tanis H.* (1997) 59 Cal.App.4th 1218, 1227.) As an appellate court, we do not reassess the credibility of witnesses or reweigh the evidence. (*Ibid.*)

We have reviewed the evidence adduced at both hearings with this standard in mind. The evidence adduced at the jurisdictional hearing more than amply supported the juvenile court's finding that R.B. currently has a substance abuse problem that interferes with his ability to safely parent his child. At the time of minor's birth, R.B. made a number of statements, summarized at length above, that support the inference he was at that time suffering from a significant methamphetamine addiction, despite his participation in a court-ordered drug treatment program. R.B.'s age, and the length of his drug-related criminal record, support the conclusion his problem is a long-standing one. Statements made by mother, who continued to see and sometimes cohabit with R.B. throughout the dependency proceedings, demonstrated R.B. continued to use drugs in June of 2015. The conclusion is inescapable that a person with a chronic drug dependency habit is not able to safely parent his child. It is true R.B. testified that much of the evidence against him was false. However, the juvenile court disbelieved him and believed the social workers, and we are bound by those credibility determinations.

R.B. also argues the evidence of mother's statements that she used illegal drugs with him in June 2105 was inadmissible and should not have been considered by the court. We disagree. Section 355, subdivision (b) provides that hearsay evidence

9

contained in a social study[7] prepared by the petitioning agency is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to section 300 may be based. However, "[i]f a party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes one or more of the following exceptions: [¶] (A) The hearsay evidence would be admissible in any civil or criminal proceeding under any statutory or decisional exception to the prohibition against hearsay." (§ 355, subd. (c)(1).)

If no exception to the hearsay rule applies, the evidence must be corroborated. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1280, citing *In re B.D.* (2007) 156 Cal.App.4th 975, 983–984.) "[W]ith respect to dependency jurisdictional findings, corroborative evidence, whether direct or circumstantial, (1) is sufficient if it tends to connect the allegedly offending parent with the alleged negligent act even though it is slight and ' "entitled, when standing by itself, to but little consideration [citations], nor does it need to establish the precise facts" ' in the hearsay statements; (2) is sufficient if it tends to connect the allegedly offending parent with the alleged negligent act and the parent's ' "own statements and admissions, made in connection with other testimony, may afford corroboratory proof sufficient" ' to find jurisdiction; (3) need not ' "go so far as to establish by itself, and without the aid of the testimony of [the hearsay declarant], that the [allegedly offending parent] committed the [negligent act] charged" '; (4) may include the allegedly offending parent's ' "own testimony and inferences therefrom, as well as the inferences from the circumstances surrounding the entire transaction" '; and (5) may

---

[7] "For purposes of this section, 'social study' means any written report furnished to the juvenile court and to all parties or their counsel by the county probation or welfare department in any matter involving the custody, status, or welfare of a minor in a dependency proceeding." (§ 355, subd. (b)(1).)

10

consist of '[f]alse or misleading statements to authorities . . . or as part of circumstances supportive of corroboration.' " (*In re Christian P.* (2012) 208 Cal.App.4th 437, 448, quoting *In re B.D.,* at p. 985.) However, hearsay evidence that would be inadmissible at a jurisdictional hearing may nevertheless by considered at a dispositional hearing. (*In re Vincent G.* (2008) 162 Cal.App.4th 238, 244.)

County counsel argues the evidence was admissible under Evidence Code section 1230, statements made against interest.[8] Here, R.B.'s counsel appeared to concede mother was not available, and mother's admission to the social worker that she used controlled substances with R.B. put at risk her interest in ever gaining custody of her child. In any event, R.B.'s admission that he continued to reside with mother off and on, and that she looked to him to supply her with drugs, along with extensive evidence of the long-standing nature of his methamphetamine habit, including a lengthy criminal record of drug-related offenses, his prior admissions, and his refusals to submit to drug tests, were sufficient corroboration of mother's statements.

The evidence was also sufficient to support a bypass of reunification services. Pursuant to section 361.5, subdivision (b)(13), the court may deny reunification services to a parent if the parent "has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention." R.B. argues the court's finding that he suffers from extensive, abusive and chronic substance abuse is not supported by substantial evidence because his criminal

---

[8] Evidence Code section 1230 provides: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, or so far tended to render invalid a claim by him against another, or created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true."

record as summarized by the Agency inaccurately included his father's and his son's criminal past as well as his own, and because the social worker's summary was inadmissible secondary evidence. We disagree.

As to the first point, the trial court rejected R.B.'s assertion of factual error in the CLETS information and accepted county counsel Parker's testimony as to his experience in interpreting CLETS summaries provided to social workers, his understanding that the social worker is prohibited from including the original CLETS report in the social study, and his opinion that the social worker in this case accurately represented the criminal record belonging to R.B., born on February 2, 1967. As to the second point, our Supreme Court has held that a CLETS printout is immune to a hearsay challenge, as it qualifies as an official record under Evidence Code section 1280. (*People v. Martinez* (2000) 22 Cal.4th 106, 126–128.) Furthermore, even if the printout were hearsay, hearsay is admissible at the dispositional hearing. (*In re Vincent G.*, *supra*, 162 Cal.App.4th at p. 244.) Under the circumstances, the trial court did not abuse its discretion in considering an accurate summary in the social study of the information contained in the CLETS printout.

R.B. also argues the evidence is insufficient to support the court's finding that he resisted drug treatment. We disagree. The court's finding was based on evidence that he knew how to game drug testing, evidently did so while in a court-ordered treatment program, graduated from the program, and then continued using drugs, as evidenced by mother's statements and his own repeated refusals to submit to drug tests. The court's findings of chronicity and resistance to treatment are supported by substantial evidence.

12

**DISPOSITION**

The petition for extraordinary writ is denied on the merits. (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024.) The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____
DONDERO, J.


We concur:


_____
MARGULIES, Acting P.J.


_____
BANKE, J.

14

A148146