Filed 2/10/22  In re Ka.C. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Ka.C. et al., Persons Coming Under the Juvenile Court Law. | B312403 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KRYSTAL B.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 19CCJP08082A 19CCJP08082B 19CCJP08082C) |

APPEAL from orders of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Conditionally affirmed with directions.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Krystal B. (mother) appeals the findings and orders entered at a six-month review hearing held under Welfare and Institutions Code[1] section 366.21.  Because it is undisputed that the Los Angeles Department of Children and Family Services (DCFS) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.), mother contends that the orders must be conditionally reversed and remanded.  We remand for compliance with ICWA but conditionally affirm the findings and orders of the juvenile court in all other respects.

## BACKGROUND

Mother and father are the parents of three daughters: Ka.C. (born 2009), Ki.C. (born 2010), and Kh.C. (born 2014).  Father is not a party to this appeal.

On December 13, 2019, the El Monte Police Department received reports from two independent witnesses that mother was yelling and cursing at the children and had pushed Kh.C. to the ground in front of a bus stop.  Mother tested positive for being under the influence of an alcoholic beverage and displayed objective symptoms of being under the influence of an alcoholic beverage and marijuana.  Mother was arrested for child endangerment and the children were released to father.

The matter was referred to DCFS.  On December 16, 2019, the juvenile court granted an expedited removal order, and the

_____

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

children were detained from mother. The following day, mother pleaded no contest to the criminal child endangerment charge. The criminal court signed a protective order providing that mother was not to have any contact with the children and could not come within 100 yards of the children.

On December 18, 2019, DCFS filed a petition pursuant to section 300, subdivisions (a), (b)(1), and (j), alleging that the children needed the protection of the juvenile court. The juvenile court held the initial petition hearing the following day. Mother did not appear. The court ordered that the children remain released to father and detained from mother. The court observed that father had reported no American Indian ancestry and inquired whether the children may have American Indian ancestry on their mother's side. Based on father's representation that the maternal grandmother is Cherokee, the juvenile court instructed that DCFS " is to interview the maternal grandmother and any other knowledgeable relatives and after [DCFS] has obtained all available information, [DCFS] is to fulfill its duty to provide notice under the Indian Child Welfare Act."

On May 28, 2020, a children's social worker (CSW) conducted an unannounced visit and saw mother at the family apartment in violation of the protective order. DCFS obtained an approved removal warrant for the detention of the children from father on June 4, 2020. The children were ultimately placed with paternal grandmother.

DCFS submitted a first amended petition on July 23, 2020, which included an additional allegation that father created a detrimental and endangering home environment by allowing mother to reside in the same home as the children.

The jurisdiction and disposition hearing took place on November 9 and 12, 2020. Mother did not appear, though DCFS reported that it seemed that mother continued to live with father. The juvenile court considered father's testimony and the DCFS reports, and heard argument from the children's counsel, counsel for DCFS, and counsel for father. The court sustained the counts under section 300, subdivision (b) with some amendments. The court ordered that the children be removed from the custody of both parents and found that their placement with paternal grandmother was suitable. The court also ordered family reunification services for father and instructed that mother receive services if she was located.

In February 2021, mother obtained a modified criminal protective order that allowed her to have visits with the children and filed a request to the juvenile court seeking reunification services. The court granted mother's request. On May 13, 2021, mother filed a parental notification of Indian status form indicating that her mother has Cherokee ancestry.

At the six-month review hearing on May 13, 2021, counsel specially appeared for mother and asked the juvenile court for permission to file a motion to vacate the court's prior orders for lack of due process notice, which the juvenile court denied.[2] The court found that continued jurisdiction existed under section 300 and that it would be detrimental to return the children to mother

---

[2] Mother sought to make her motion under *Ansley* v. *Superior Court* (1986) 185 Cal.App.3d 477. In that case, the court held that a parent "claiming lack of due process notice of a juvenile dependency petition can challenge the resulting dependency judgment by filing a petition pursuant to section 388 in the same dependency proceedings." (*Id*. at p. 481.)

4

and father. The court ordered that reunification services be continued for both parents.

The juvenile court also inquired into mother's American Indian ancestry and counsel for mother informed the court that the maternal grandmother has Cherokee ancestry. The juvenile court instructed that DCFS "is to interview any and all knowledgeable maternal relatives, obtain all available information and then fulfill its responsibility to provide notice as required by the Indian Child Welfare Act."

Though DCFS assessed the maternal grandmother for placement, the record does not indicate that DCFS inquired into the maternal grandmother's Cherokee ancestry. DCFS's detention report, jurisdiction/disposition reports, progress report, and status review report each inaccurately stated that "[o]n 12/19/2019, the Court found that the Indian Child Welfare Act does not apply as to the mother."

Mother filed a timely notice of appeal.[3]

After the parties filed their appellate briefs, this court issued an order stating that it intended to take judicial notice of DCFS's status reports filed August 10 and December 2, 2021 and the juvenile court's minute orders from the review hearings dated August 17 and December 14, 2021. We now take judicial notice of these documents. These documents appear to indicate that DCFS had not made any additional inquiry as to mother's

_____

[3] The notice of appeal stated that mother appealed "[a]ny and all appealable issues, including the court denying the Mother the opportunity to appear specially and file an *Ansley* motion." Mother does not address the special appearance or *Ansley* issues in her appellate briefs, and thus her appeal as to those issues is deemed to be waived.

5

Cherokee ancestry.[4] The December 14 minute order terminated reunification services for mother and father and set a permanency planning hearing for April 12, 2022.

We asked that DCFS file a supplemental letter brief addressing its position on appeal in light of this additional information. In its supplemental brief, DCFS conceded that the documents of which we have taken judicial notice indicated that DCFS had not yet complied with the juvenile court's orders with respect to ICWA, but maintained that reversal was not warranted. DCFS stated that a CSW had questioned the maternal grandmother regarding her Cherokee ancestry, and she informed DCFS that her father's mother was Cherokee, but did not identify a particular tribe, nor did she have any information concerning an ancestor being a registered member of a tribe. DCFS stated that it would therefore provide notice to the three Cherokee tribes.

## DISCUSSION

Mother argues, and DCFS does not dispute, that DCFS failed to comply with ICWA's notice and inquiry provisions. Mother contends that we must therefore conditionally reverse the orders issued at the six-month review hearing and remand the matter for compliance with ICWA. DCFS argues that the orders at the six-month review hearing should be affirmed and that no remand is necessary because the juvenile court already ordered

---

[4] The Court of Appeal may consider juvenile court orders and DCFS reports issued or filed after an appeal is pending when relevant to show whether an appeal is moot. (See *In re B.D.* (2008) 159 Cal.App.4th 1218, 1240; *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1422.)

that DCFS comply with ICWA.  In the alternative, DCFS asks that we affirm the orders and remand for compliance with ICWA.

"The United States Congress enacted ICWA to respond to a crisis in which large numbers of Indian children were being removed from their families for placement in non-Indian homes. [Citation.]  ICWA was designed to protect the best interests of Indian children and promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families by state courts and the placement of such children in foster or adoptive homes.  [Citation.]  [¶]  At the heart of ICWA are its jurisdictional provisions over child custody proceedings involving Indian children domiciled both on and off the reservation." (*In re Christian P.* (2012) 208 Cal.App.4th 437, 450–451, fn. omitted.)

As our Supreme Court has recognized, ICWA and corresponding provisions of California law impose on the courts and county welfare departments "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 9; § 224.3, subd. (a).)  An " 'Indian child' " for purposes of the ICWA is defined in the same manner as under federal law as, "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

"If the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but

7

does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know" as set forth in section 224.2, subdivision (d) (§ 224.2, subd. (e)(1)), including that "[a] person having an interest in the child, including the child . . . or a member of the child's extended family informs the court that the child is an Indian child." (§ 224.2, subd. (d)(1).)

DCFS does not dispute that it had reason to believe that the children may be Indian children based on mother's and father's representations to the court, and that it failed to make any inquiries regarding mother's Cherokee ancestry until recently. Nor does DCFS argue that mother waived her right to raise ICWA compliance on appeal because she did not appeal the earlier findings and orders of the juvenile court. (See *In re Isaiah W.*, *supra*, 1 Cal.5th at pp. 14–15.) The only dispute on appeal is the appropriate redress for DCFS's failure to inquire.

There is a split of authority as to whether failure to meet the inquiry and notice requirements of ICWA constitutes jurisdictional error that requires reversal. We agree with decisions of the Court of Appeal holding that failure to comply

8

with the notice and inquiry provisions of ICWA is not jurisdictional error but subject to a harmless error analysis. (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 384–385; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1409–1411.) Accordingly, "the only order which would be subject to reversal for failure to give notice would be an order terminating parental rights." (*Brooke C.*, at p. 385.) Where no such order has issued, all other court orders remain in effect. (*Ibid.*) "The lack of statutory notice nonetheless requires a limited remand to the juvenile court for [DCFS] to comply with the notice requirements of the ICWA, with directions to the juvenile court depending on the outcome of such notice." (*Ibid.*) If the children are determined not to be Indian children, then all orders will stand. (See *ibid.*) If ICWA is found to apply to the children, then mother may petition the juvenile court to invalidate any orders that were contrary to ICWA. (See *ibid.*)

Here, "[m]other neither argued nor pointed to any facts that support the conclusion that she would have obtained a more favorable result in the absence of the error." (*In re Christian P.*, *supra*, 208 Cal.App.4th at p. 452.) Thus, as this court held in *Christian P.*, "rather than reversal, the proper remedy here is a limited remand to allow DCFS to comply with ICWA." (*Ibid.*)

Mother cites *Nicole K.* v. *Superior Court* (2007) 146 Cal.App.4th 779, 785 and *In re S.E.* (2013) 217 Cal.App.4th 610, 613, in which courts disagreed with the holding in *In re Brooke C.* and ordered the conditional reversal of the juvenile court's orders pending full compliance with ICWA. However, consistent with our prior ruling in *In re Christian P.*, we are persuaded that reversal of the existing orders of the juvenile court is not necessary to preserve the remedy provided under

ICWA.  Moreover, a majority of our sister courts have taken the approach endorsed in *In re Brooke C.* rather than that adopted in *Nicole K.*  (See, e.g., *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1388–1389; *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467; *In re Damian C.* (2009) 178 Cal.App.4th 192, 199–200; *In re Veronica G.* (2007) 157 Cal.App.4th 179, 187–188; *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 340–341.)  We see no reason to depart from that approach in this case.

We emphasize that upon remand the juvenile court must ensure DCFS's prompt compliance with ICWA.  Fulfilling ICWA requirements in a swift and diligent manner is particularly important in light of the forthcoming permanency planning hearing, at which it is possible that parental rights may be terminated.  No further delay is appropriate.

## DISPOSITION

The juvenile court's findings and orders at the six-month review hearing are conditionally affirmed, and the matter is remanded to the juvenile court for compliance with ICWA and related California law.

NOT TO BE PUBLISHED.


LIPNER, J.[*]

We concur:


EDMON, P. J.          EGERTON, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.